### AT THE

## MARCH SESSION 1873, IN BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. SETH AMES,         } Justices.
Hon. MARCUS MORTON,

## SUFFOLK COUNTY.

### George B. Upton *vs.* Sturbridge Cotton Mills.*

A delivery, apparently unrestricted, of goods sold for cash, is a waiver of the condition that payment is to be made before the passing of the property in the goods, although the seller has an undisclosed intent not to waive the condition.

If the plaintiff introduces evidence of a usage, and the defendant introduces evidence of a different usage, the refusal of the judge to rule that if the evidence is conflicting the defendant cannot maintain his defence on the ground of usage, gives the plaintiff no ground of exception, if the defendant relies upon his evidence of usage only to negative the usage sought to be established by the plaintiff.

In an action for the conversion of the plaintiff's goods sold and delivered by him to J. S., and by J. S. to the defendant, in which the plaintiff contends that the delivery to J. S.

---

* This case was argued in January 1873 before all the judges except Gray, J.

was conditional on payment, and that J. S. did not pay, evidence that J. S. was at tho time deeply insolvent is immaterial, if offered, not to show fraud on the part of J. S., but to repel any inference, from the fact of resale, that J. S. understood the delivery to be absolute, if such fact is not used to raise that inference.

TORT for the conversion of seventy-eight bales of cotton.

At the trial in this court, before *Morton*, J., the plaintiff testified that he was owner of the cotton, and authorized a broker to sell it for cash ; that on November 27 the broker brought him a sale note thereof to Jenkins Brothers & Chipman ; that on November 28 the plaintiff sent to his weigher, and to A. C. Lombard, in whose loft the cotton was stored, written directions to weigh and turn out the cotton ; " that, although he did not know that the cotton was taken possession of by the purchaser, he supposed it would be, under such an order to turn out ; that cotton comes from the South, with the producer's marks of weight, and is exposed to damage in the transit, and to being sanded and falsely packed ; that turning out is for the purpose of allowing the purchaser to inspect, reweigh, resample and examine the cotton ; that, according to the usage, as understood by him at the time, the purchaser of cotton for cash has ten days within which he is to examine the cotton, and is bound to pay for it at some time within that period ; that he had, himself, been for many years a seller of cotton, and occasionally a purchaser ; that, within a day or two of the purchase, he received from the weigher the weights of the cotton, and then sent his bill to Jenkins Brothers & Chipman, with a certificate of weights ; that, on December 7, not having received his money, he sent for the same to Jenkins Brothers & Chipman, who sent him a check which, on presentation to the bank, was refused payment ; that, at the time of the sale, he did not know Jenkins Brothers & Chipman, nor their pecuniary ability, and made no inquiries as to their credit, supposing himself safe, the title of the cotton being in him ; that he sent the order to turn out the cotton, understanding that such lelivery was conditional, not intending to part with the title until he got his money ; and that he acted in this in conformity to the usage, as he understood it, when sales of cotton are made for cash."

It was proved that Jenkins Brothers & Chipman failed on December 8; that on November 28, the day the cotton was turned out, they removed it, and pledged it to one Hurlburt, to supply the place of other cotton previously pledged to him, which had been taken away; that the defendants bought the cotton of Jenkins Brothers & Chipman, on Saturday, December 5, for " cash on delivery; " and that it was delivered to them on Monday, and paid for by them on the next day. Neither of the firm of Jenkins Brothers & Chipman were called as witnesses. The plaintiff demanded the cotton of the defendants on December 15.

The plaintiff offered to prove that Jenkins Brothers & Chipman were largely and deeply insolvent at the time of the purchase; but the defendants objected, and the judge excluded the evidence.

To fortify the plaintiff's testimony as to his intention in ordering the cotton turned out and put into the possession of the purchaser, the plaintiff called George M. Barnard, and six other merchants and cotton brokers, who were, and had been for many years prior to 1868, and ever since, large dealers in cotton, who testified " that they knew the usage as to cotton sales at the time of this sale, and long prior thereto; that, in a sale of cotton for cash, it was the usage to allow the purchaser to take possession of the property, and to have the cotton turned out for his examination, and within ten days of the sale he was bound to complete his examination, and pay for the cotton; that the delivery by the seller was a conditional one, for the purposes aforesaid, and did not, and was not intended to pass the title; and that no title passed until the money was paid." Barnard, who had been many years in the business, testified that the usage arose " from the nature of the article, from the fact that it is exposed to damage, false packing, and false samples; that it requires to be examined on all sides, which cannot be done in store, nor in bad weather; that sometimes cotton is on shipboard, and delays occur in unlading; that uncertainty and delays resulted from these causes; and that those delays had sometimes extended to thirty days, until the usage of ten days was established, within which the examination

must be made, and the money paid." It was stated by most of the plaintiff's witnesses that it was the practice of the purchasers to resell within the ten days, and that such practice was known to the sellers; some of them stated that such sales were understood to be subject to the title of the original seller; others, that the sale was made on the responsibility of the party so selling, and did not divest the seller's title. Some of the witnesses testified that the usage of trade authorized resale, and that they all did it.

The defendants called thirteen witnesses, dealers and cotton brokers, who testified "that they knew of no such usage as that of a conditional delivery of cotton, in sales for cash, for the purposes of examination, and to be paid for within ten days; that by the usage of the trade all such sales were on a credit of ten days, vesting the property at once by delivery or turning out in the purchaser; that it was frequently the custom, if the purchase money was paid before the ten days, to demand and receive an abatement equal to the interest, and sometimes a bonus beyond interest; that whatever examination was made by the purchaser, was made at the time of turning out and taking possession; and that upon a sale for ' cash on delivery,' it was understood that cash was paid contemporaneously."

The plaintiff's witnesses, being recalled, testified that no usage existed, or was ever known to them, by which a credit of ten days, or any other credit, was given, in sales of cotton for cash.

The plaintiff requested the judge to instruct the jury as follows:

" 1. In legal construction the written contract between the parties is a ' conditional sale for cash,' and vests no title in the purchaser until the terms have been complied with, unless it should be shown that the plaintiff knowingly and voluntarily waived the condition. 2. The evidence of the defendant that the legal construction is not the true one, and that by the usage of trade such a contract is a sale on a credit of ten days, cannot be supported unless that usage be proved to be uniform and general; so that if there be a conflict of evidence on this point the defendant cannot by law maintain his defence on that ground.

3. Upon the question whether the plaintiff voluntarily waived the condition, if there be a conflict of evidence upon the question whether there existed a usage to deliver cotton on a cash sale conditionally and for the purpose of examination, yet as this evidence as to usage is offered by the plaintiff to show that his understanding, as stated by him, of a usage, was not baseless, and guided his conduct, it is not requisite that there should be no conflicting evidence as to the usage. 4. In relation to the question of a voluntary waiver of the condition of sale by a delivery of possession, the true inquiry is, What was the intent of the vendor? Was it to make such waiver? and not, What was the intent of the vendee, who has nothing to waive. Unexplained, the mere act of delivery may be taken as evidence of such waiver, but it is open to explanation by the vendor."

The judge declined to give these instructions, or either of them, except so far as is contained in his instructions upon the subjects embraced in the prayers, which were, in substance, as follows: " The written contract, standing alone, imports a sale for cash upon the condition that the cash is to be paid upon delivery; delivery under it is presumptively a waiver of this condition; but such delivery may be conditional, in which case the title does not pass until the condition is performed. In this case, as it is not claimed that there was any expressed agreement that the delivery to Jenkins Brothers & Chipman was conditional, one of the questions is, whether there was a condition by a usage of the trade. The plaintiff contends, as one of the grounds entitling him to recover, that there is a usage of the trade, that in such a transaction as this the delivery is conditional, and by it the title to the property sold does not pass to the buyer until it is paid for. It is incumbent upon the plaintiff to show this. If he has done so, then no title to the cotton in controversy passed to Jenkins Brothers & Chipman; they could give no title to the defendants, and the plaintiff is entitled to recover. If no such usage is shown to exist, then by the sale and delivery the title passed, and the plaintiff cannot recover. Such usage must be shown to be uniform and general. It is not enough that half the trade practise upon the usage, if the other half do not."

The jury returned a verdict for the defendants, and the judge reported the case for the consideration of the full court. If any of the rulings or refusals to rule were erroneous, a new trial to be ordered; otherwise judgment to be entered on the verdict.

*S. Bartlett,* for the plaintiff. The leading question of the cause is whether the fourth prayer for instructions is applicable to the case and rests upon sound legal principles. That there was evidence of the intent of the plaintiff proper to be submitted to the jury, if the legal principles stated in the prayer are sound, is indisputable.

We have then the distinct question, whether in a case where an act has been done by a party in whose favor a condition precedent exists, which act is, presumptively only, a waiver of the condition, and such act is not done by agreement, and its purpose and intended effect is in controversy, the intent of the party doing the act, shown by appropriate evidence, is or is not the true inquiry. It is clear that beside and beyond the intent of such party, that of no other party can be suggested save that of the party to whose benefit the waiver enures. If a waiver of condition had in it the elements of contract, requiring for its efficacy the concurrence of two minds, the purpose of the party receiving the benefit of the waiver might be important, but it has no such elements.

That the doctrine of the prayer is sound and supported by numerous cases decided in this court, would seem clear. Thus, in *Smith* v. *Dennie,* 6 Pick. 262, 266, the court declare, " We do not think, after a conditional bargain has been made and a delivery immediately taken place upon the expectation that the contemplated security shall be produced, without an express declaration that the delivery is also conditional, that the sale *ipso facto* becomes absolute." In *Farlow* v. *Ellis,* 15 Gray, 229, 232, the court say, " Voluntary choice not to claim is of the essence of waiver; " " the question of waiver, therefore, is a question of fact for a jury; " " however proved, the question is, Has he willingly given up and forborne to claim the benefit of the condition? In this case it was, Did the plaintiff voluntarily deliver the goods, without intending to rely on the condition."

In the following cases, the condition was held not to be waived, though the delivery was made without any declaration of the vendor at the time, nor was it the subject of agreement: *Farlow* v. *Ellis*, 15 Gray, 229; *Hirschorn* v. *Canney*, 98 Mass. 149; *Coggill* v. *Hartford & New Haven Railroad Co.* 3 Gray, 545; *Tyler* v. *Freeman*, 3 Cush. 261; *Whitney* v. *Eaton*, 15 Gray, 225; *Adams* v. *O'Connor*, 100 Mass. 515.

The second prayer for instructions should have been given.

The evidence of the insolvency of the vendees should have been admitted. The immediate pledge of the cotton by them was consistent only with the view, if they were honest, that the delivery was a waiver.

*H. W. Paine & R. D. Smith*, for the defendants.

WELLS, J. This case turned upon the question whether title passed from the plaintiff to the purchaser by the sale and delivery. Apparently it was not expected to impeach the title of the defendant as a *bona fide* purchaser from Jenkins Brothers & Chipman. It would not avail the plaintiff, therefore, to establish a right to rescind his contract of sale for any cause; or to revoke the delivery in order to restore himself to his lien by regaining possession. It was necessary to show that the sale and delivery were conditional, so that no title passed to Jenkins Brothers & Chipman; and consequently none could be conveyed by them to the defendant. Failing to establish the usage, upon which he relied for this purpose, the plaintiff contends that the sale and delivery were conditional because he so understood and intended them to be; and, in support of his testimony to that effect, relies upon evidence of such a practice and understanding prevailing to a considerable extent among dealers in the same trade with these several parties.

The several instructions prayed for, except the second, present this question in its different aspects. The fourth is as follows: " In relation to the question of a voluntary waiver of the condition of sale by a delivery of possession, the true inquiry is, What was the intent of the vendor? Was it to make such waiver? and not, What was the intent of the vendee, who has nothing to waive? Unexplained, the mere act of delivery may be taken as

evidence of such waiver, but it is open to explanation by the vendor."

The instructions to the jury were sufficiently favorable to the plaintiff, and adopted the positions contended for in his behalf, except in the matter of intent. Upon that point the argument of the plaintiff is that the waiver of a condition has in it no elements of contract, requiring for its efficacy the concurrence of two minds, and therefore the purpose of the party receiving the benefit of the waiver is unimportant. But a waiver is the result of a voluntary unequivocal act of delivery. To say that a party does not thereby intend a waiver, is to say that he does not intend the legal effect of his voluntary act.

Perhaps a better answer to the argument is that, as applied to a sale of personal property, its premises are unsound. "Delivery," as applied to a change of possession in pursuance of a sale, ordinarily includes both the act of the vendor in transferring the property, and that of the vendee in receiving it. If unaccompanied by any word, or act, or circumstance to indicate that it is qualified or made subject to a condition, the vendee has a right to understand it to be absolute. To hold him accountable, as the custodian of property belonging to another, requires his assent to the obligation, either express or by implication. If there has been a completed delivery, the denial of a waiver involves necessarily the affirmative proposition that the other party to the delivery has accepted the possession subject to the condition. The reciprocal relations of the parties are the same as in all matters of contract.

It is true that it is entirely at the option of the vendor whether he will waive the condition or not. It requires his voluntary act. But when he voluntarily does the act, which, unexplained, constitutes a waiver, he not only may be presumed to intend it, but he changes the relations between himself and the purchaser in respect to the property and the contract of sale. If he would impose any condition upon the purchaser, affecting those new relations, or any obligation not implied from the transaction itself, he should manifest his purpose in some mode, so that the other party may assent or dissent. The purchaser may be presumed

to assent to a waiver; but he cannot be presumed, by accepting a delivery apparently unrestricted, to assent to a condition which lies in the undisclosed intent of the other party. *Taft v. Dickinson,* 6 Allen, 553.

The second instruction prayed for was properly refused. The importance of the evidence offered by the defendant was not to establish a different usage, but to show practices inconsistent with the alleged usage set up by the plaintiff.

The evidence offered to show that Jenkins Brothers & Chipman were deeply insolvent at the time of the purchase was irrelevant and immaterial to the question in controversy. As we understand the report, it was not offered to show that the purchase was fraudulent and voidable; but to repel any inference, from the fact of immediate resale, that Jenkins Brothers & Chipman understood the delivery to be absolute. It does not appear that the fact was allowed to be, or that it was, used for that purpose; nor that it became of any importance to the defence.

*Judgment on the verdict.*