FRANCIS H. PEABODY and others *vs.* JAMES MAGUIRE and another; CHASE, LEAVITT AND COMPANY, trustees; and J. O. LAFRENIERE and DESROSIERS AND PAILLE, claimants.

Cumberland. Opinion December 27, 1887.

*Trustee process. Attachment. Goods in bonded warehouse. Sales. Conditional sales. Waiver. Conflict of laws. Amendment of trustee writ. Practice.*

Property in bond for storage in the United States custom house, is not subject to actual attachment by a state officer, although it is in the constructive possession and control of the consignee.

While thus situated it may be subject to trustee process.

A sale and delivery of goods on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title till performance of the condition, and if the condition is not fulfilled, the vendor may repossess himself of the goods, not only as against the vendee, but also against his creditors.

So if the property is to be paid for by cash or note on delivery, the payment of the money or giving of the note is a condition precedent to the passing of the title; and until that is done, or waived, no title passes.

Where delivery and payment are to be simultaneous, and the goods are delivered with the expectation that the price is to be paid immediately, which is not done, the seller is entitled to put an end to the contract and reclaim the goods.

But although a sale is conditional, the vendor may waive the condition of the sale, and by so doing pass the title.

When the condition is shown to have been waived the sale becomes absolute, and vests the title in the purchaser.

Even in a conditional sale the mere fact of delivery, without performance by the purchaser of the conditions of sale, and without anything being said about the condition, although it may afford presumptive evidence of an absolute delivery and of a waiver of the condition, yet it may be controlled and explained, and is not necessarily an absolute delivery, or a waiver of the condition.

This is a question of fact to be ascertained from the evidence, and, like any other fact, may be proved either directly or inferentially from circumstances.

The law of the country where the contract is made, is the law for its interpretation and construction, although its performance may be demanded in a foreign jurisdiction.

Where no foreign law is proved which shows that the rights of the parties are to be affected in any manner different from the law of the country where the remedy is sought, the court will assume that their rights are to be determined in accordance with those laws existing in the country where the remedy is sought.

When a writ is sued out against one only of two members of a copartnership, and served upon the alleged trustees of said copartnership, no valid attachment is created against the partnership property in the hands of the alleged trustees.

As soon, however, as such writ is amended by leave of court, by joining the other partner as a defendant, the alleged trustees still continuing to hold the property, then all the necessary parties being before the court, and no rights of third parties having intervened, the previous attachment becomes valid as to the property in the hands and possession of the said trustees.

As against a claimant who appears and claims the property in the hands of the trustee, the plaintiff, if he prevails in holding the property, is entitled to costs from the time such claimant appears claiming the property in dispute.

On report from the superior court.

The case is stated in the opinion.

The following are the laws of Canada referred to in the opinion which were introduced as evidence in the case :

(Copies of Laws.)

[Seal.]

Article 1998 of the Civil Code of Lower Canada in force since the first of August, 1866.   "The unpaid vendor of a thing has two privileged rights :

1st.   A right to revendicate it.

2nd.   A right of preference upon its price.

In the case of insolvent traders, these rights must be exercised within fifteen days after the sale."

It was held in the superior court at Montreal, by Justice Rainville, in the case of *Thibandeau and als.* v. *Mills and al.* on the twenty-eighth day of February, 1883, as follows :

" Considering that under the terms of Art. 1998 of the Civil Code of L. C., the vendor of a thing unpaid may exercise two privileges : 1st, that of its revendication ; 2nd, that of preference on its price.

" Considering that under the terms of Art. 2000, the unpaid vendor, if he has lost his right to revendicate, or if he has sold with a term, keeps his privilege on the product of a thing against all creditors except the lessor and the bailee.

"Considering that it is proved that the goods in question at the time of their return to the vendor by the vendee, were in the same state as at the time of their delivery, separated from all the other goods of the said Chaput and Masse, entire and bound with ropes, and that there is no doubt as to their identity.

"Considering that under the terms of the Art. 1543, C. C., the vendor of a moveable property has a right to the cancelling of the sale, for default of payment of the price, so long as the thing sold remains in the hands of the buyer.

" Considering that the parties have without fraud cancelled the said agreement or sale, by mutual consent, and that the said Chaput and Masse have executed beforehand what the law would have obliged them to do, and that the plaintiffs did not suffer any prejudice from that transaction in so far as the effect of the exercise of the privilege of said Mills and Hutchinson, by one way or another, would have been the same.

" Considering that under the terms of Art. 1998, the vendor, in

cases of insolvency under an insolvent law, *faillite*, can only exercise his privileges within fifteen days after the sale; that such provision applies only to cases of insolvency under an insolvent law, *faillite*, and not in cases of insolvency under common law, *insolvabilite*, the said Chaput and Masse are not insolvent traders in so far as there is no longer a law permitting to put a person in insolvency, and that in consequence the unpaid vendor is always in time to exercise his right of preference."

Maintains the said pleas, etc., etc.

It was held by Mr. Justice Rainville, sitting in the superior court at Montreal, on September 7th, 1877, in the case of Thompson and Whitehead, insolvents, Thos. Darling, assignee, and W. Greenwood, petitioner, as follows, according to the report of the case, 9 R. L. p. 379 :

" The petitioner, merchant of Leeds, England, presented a petition in order to recover possession of goods sold to the insolvents and sent by the petitioner to the buyers' agent at Liverpool and expedited by such agent to Montreal, where they were stored in the custom house; in the meantime the buyers had become insolvent.

" The assignee opposed the petition on the ground that the conveyance of the goods had ceased by their delivery to the buyers' agent at Liverpool and by their arrival at Montreal.

"Many authorities were cited on both sides, among others sec. 82 of the Insolvent Act of 1875, which enacts that: ' In the preparation of the dividend sheet, due regard shall be had of the rank and privilege of every creditor; which rank and privilege, upon whatever they may legally be founded, shall not be disturbed by the provisions of this act except in the province of Quebec, where the privilege of the unpaid vendor shall cease from the delivery of the goods sold.'

" His honor granted the petition on the principle that the delivery of goods according to Art. 1543 of the C. C. means their delivery in the store and in the hands of the insolvents, and not their deposit at the custom house, and that the vendor of moveable effects has a right to revendicate goods unpaid. "

Art. 1543 is in the following terms : " In the sale of moveable

things, the right of dissolution by reason of the non-payment of the price can only be exercised while the thing sold remains in the possession of the buyer, without prejudice to the seller's right of revendication, as provided in the title of 'Privileges and Hypothecs.'"

It was held in the superior court at Montreal, *re Hawsworth* v. *Elliott*, X. L. C. Jurist, 197: "That the delivery contemplated by the 12th section of the Insolvent Act of 1864, is an actual, complete and final one, and consequently the delivery of goods to a purchaser's shipping agent in England, for transmission to purchaser in Canada, and the entering of the goods in bond here, by the purchaser's custom house broker, is not such a delivery as will defeat the vendor's remedy, under the 176th and 177th articles of the Custom of Paris."

It was held in the superior court at Montreal, *re The Bank of Toronto* v. *Hingston*, XII L. C. Jurist, 216, "That the expression 'fifteen days after the sale' in the 1998th article of the Civil Code of Lower Canada, means after the sale and delivery. The delivery of goods sold in England to a shipping agent there, employed by the vendees, who forwards them to the vendees carrying on business in Montreal, is not such a delivery as is contemplated by the 12th section of the Insolvent Act of 1864, and such goods may be legally revendicated by the unpaid vendors in the hands of the Grand Trunk Railway here, although more than fifteen days elapsed since each delivery to the shipping agent."

We, Prothonotary of the superior court of the district of Montreal, hereby certify that the preceding pages contain faithful transcript of the Civil Code in force in this province and a faithful translation of judgments and reports in the way above indicated.

[Stamp.   Seal.]              Geo. H. Kernick,
                        Deputy Proth'y Superior Court,
                              District of Montreal.

*J. W. Spaulding and Enoch Knight,* (*I. W. Dyer* with them) for plaintiffs.

Trustee process was the proper remedy since the lumber could not be come at to be attached. *Harris* v. *Dennie*, 3 Pet. 292; *Conard* v. *Pacific Ins. Co.* 6 Pet. 262.

There was a waiver of the conditions, if it was a conditional sale. Usher, Sales of Personal Property, § 204; *Carleton* v. *Sumner*, 4 Pick. 516; *Smith* v. *Dennie*, 6 Pick. 262; *Fairbank* v. *Phelps*, 22 Pick. 539; *Dresser M'f'g Co.* v. *Waterston*, 3 Met. 17; *Whitney* v. *Eaton*, 15 Gray, 227; *Farlow* v. *Ellis*, 15 Gray, 231; *Scudder* v. *Bradbury*, 106 Mass. 427; *Upton* v. *Sturbridge Mills*, 111 Mass. 446; *Goodwin* v. *Boston & L. R. R. Co.* 111 Mass. 489; *Haskins* v. *Warren*, 115 Mass. 533; *Freeman* v. *Nichols*, 116 Mass. 309; Benjamin, Sales, § § 677, note f, 566; see *Heller* v. *Elliot*, 16 Reporter, 276 (N. J.); *Chapman* v. *Lathrop*, 6 Cowan, 110 (8 N. Y. C. L. Law ed. 849, see note); *Lupin* v. *Marie*, 6 Wend. 77 (10 N. Y. C. L. Law ed. 1025); *Stone* v. *Perry*, 60 Maine, 49; *Seed* v. *Lord*, 66 Maine, 580; Benjamin, Sales, § 594; *Acker* v. *Campbell*, 23 Wend. 372 (14 N. Y. C. L. Law ed. 402).

The laws of Canada do not apply to this case. Daniel, Neg. Inst. § 866; 1 Burge, Com. 5; *Bartley* v. *Hodge*, 1 Best & Smith, 375; *Hawkins* v. *Barney*, 5 Pet. 457; Story, Con. of Laws, § § 414, 557, 558, 575, 576, 581, 571; *Bulger* v. *Roche*, 11 Pick. 36; 8 Pet. 361; *Potter* v. *Brown*, 5 East, 124; 2 Kent's Com. 461; 2 Burge, Com. 778; *Fox* v. *Adams*, 5 Maine, 245; 11 Maine, 41; 71 Maine, 514; *Boston Iron Co.* v. *Boston Loc. Works*, 51 Maine, 585; *May* v. *First Nat. Bank of Attleboro*, 7 Western Rep. 681; *Heyer* v. *Alexander*, 108 Ill. 385; *Rhawn* v. *Pearce*, 110 Ill. 350; *Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y. 367; *Brown* v. *Knox*, 6 Mo. 306; *Upton* v. *Hubbard*, 28 Conn. 275; *Paine* v. *Lester*, 44 Conn. 196; *Warner* v. *Jaffray*, 96 N. Y. 248; *Kidder* v. *Tufts*, 48 N. H. 121; *Davis* v. *Pierce*, 7 Minn. 13; *McFarland* v. *Butler*, 8 Minn. 116; *Jackson* v. *Buttler*, 8 Minn. 117.

*Holmes and Payson*, for the claimants.

" Where payment and delivery are agreed to be simultaneous, and the payment is omitted, evaded, or refused by the purchaser on getting possession of the goods, the seller may at once reclaim them. No title passes till the terms of the sale have been complied with. Where nothing is said about payment at the time of the purchase, the law presumes that the sale is for cash, and in such case payment and delivery are concurrent acts.

"When goods are sold on time, and delivered under an agreement that they are to be paid for in a promissory note of the purchaser, such payment is a condition precedent, and the title will not pass till it is made." Usher on Sales, Secs. 202, 203 ; 1 Benjamin on Sales, § 334.

As early as 1808 this question came before the Massachusetts court ; it was held that the title still remained in the vendors upon the simple ground that the plaintiffs had not received the security before the delivery of the goods, as appears by the ruling at *nisi prius* and the overruling of the exceptions. *Hussey* v. *Thornton*, 4 Mass. 405. In a case decided by the same court in 1827 there was a purchase of some property partly for cash and partly on credit. It was held by the court that the title never passed. *Marston* v. *Baldwin*, 17 Mass. 606.

Whenever there is any question in a conditional sale whether the vendor has made such delivery as has waived the condition, the proof is upon the party claiming the sale as against the one maintaining that any waiver existed. It is the intention of the parties which governs in such cases. *Riddle* v. *Varnum*, 20 Pick. 280.

This is to "be ascertained only from the terms of the agreement as expressed in the language and conduct of the parties and as applied to known usage and the subject matter. It must be manifested at the time the bargain is made." Of course, as was said in this case, no secret undisclosed purpose on the part of the vendor to retain the title would prevent it from passing. This is not our case. *Foster* v. *Ropes*, 111 Mass. 10, 16.

Now we understand the weight of authority to be that when a sale has been made upon any particular terms or conditions,

and the delivery made pursuant to that agreement, that is, in consequence of and by reason of it, the delivery thereby becomes conditional in like manner as the sale. *Smith* v. *Dennie*, 6 Pick. 262-266.

A distinction between a delivery which is unconditional after a conditional sale, and one where the condition still exists, is well taken. *Burbank* v. *Crooker*, 7 Gray, 158.

Sundry cases are found in the Massachusetts reports where a special agreement was proved that the property should remain the title of the vendor until paid for in cash. *Sargent* v. *Metcalf*, 5 Gray, 306; *Blanchard* v. *Child*, 7 Gray, 155.

In another case decided in 1849, a sale of teas was made, and the bill or parcels given by the seller to the buyer was, "Brown's note six months his order or four per cent off." It will be observed that this case, so far as the terms of the sale are concerned, is precisely like the case at bar. The court in that case found that the title did not pass. *Hill* v. *Freeman*, 3 Cushing, 257. See also *Coggill* v. *Hartford & New Haven R. R. Co.* 3 Gray, 545; *Deshon* v. *Bigelow*, 8 Gray, 159; *Whitney* v. *Eaton*, 15 Gray, 225; *Farlow* v. *Ellis*, 15 Gray, 229; *Hirschorn* v. *Canney*, 98 Mass. 149; *Adams* v. *O'Connor et al.* 100 Mass. 515; *Nelson* v. *Dodge*, 116 Mass. 367; *Armour* v. *Pecker*, 123 Mass. 143; *Salomon* v. *Hathaway*, 126 Mass. 482.

There is one authority in Massachusetts which seems to hold a contrary doctrine, but we do not think it is sustained either by the cases cited in support of it, or by the general course of adjudication in Massachusetts. *Freeman* v. *Nichols*, 116 Mass. 309.

The case of *Wigton* v. *Bowley*, 130 Mass. 252, is in conflict with many other cases in Massachusetts and elsewhere, because it contains the element of a draft attached to a bill of lading, upon the acceptance of which draft the bill of lading was to be delivered, and not without. See also *Blanchard* v. *Cooke*, (Mass.) 11 N. E. Rep. 83-89 (No. 1.)

In such cases it has been held over and over again that the parties holding the bill of lading and draft retain the title to the

property until the draft is either accepted or paid. *National Bank of Chicago* v. *Bayley*, 115 Mass. 228 ; *Newcomb* v. *Boston & Lowell R. R. Corporation*, 115 Mass. 230 ; *Alderman* v. *Eastern R. R. Co.* 115 Mass. 233 ; *Seymour* v. *Newton*, 105 Mass. 272 ; *Marine Bank of Chicago* v. *Wright*, 48 New York, 1 ; *National Bank of Green Bay* v. *Dearborn*, 115 Mass. 219 ; *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37.

The authorities in Maine are not numerous, but they are to the point. *Hotchkiss* v. *Hunt*, 49 Maine, 213-219 *et seq.* (1860) ; *Stone* v. *Perry*, 60 Maine, 48 ; *Seed* v. *Lord*, 66 Maine, 580.

But it is well settled doctrine that when a contract is made, the laws of the jurisdiction within which it is made enter into it so far as they appertain thereto, and the terms of the contract are modified accordingly.

This is especially illustrated in the question as to the effect of proceedings in insolvency under a State law, and a discharge thereof. It is established beyond question that a discharge under such proceedings does not discharge any debt contracted prior to the enactment of the law which authorizes such proceedings, nor does it discharge any contract entered into between the insolvent debtor and an inhabitant of another State, provided such inhabitant does not submit himself to the jurisdiction of the insolvent court by proving his debt. It does operate upon subsequent contracts where the creditor is a resident of the state at the time, because the statute enters into and forms a part of the contract. *Hackett* v. *Potter*, 135 Mass. 349 ; *Shoe & Leather Bank* v. *Wood*, 142 *Id.* 563 ; *Marwin Safe Co* v. *Norton* (N. J.) 7 At. Rep. 417, 420, and cases cited.

So far as any laws of Canada are pertinent, they are by the terms of the report to be proved by certificates. It will be seen by article 1998 of the Civil Code of Lower Canada, which includes the residence and place of business of the claimants, the residence and place of business of the vendees, and the residence and the place of business of the agent of the vendees, that the unpaid vendor of a thing has two privileged

rights, first, the right to revendicate it, second, the right of preference upon its price.

*In re Thompson and Whitehead, Insolvents, Darling, Assignee, and Greenwood, Petitioner*, 9 R. L. p. 379, *Hawsworth* v. *Elliott*, X. L. C. Jurist, 197, are to the effect, that delivery to the buyer's agent does not deprive the creditor of his rights.

In *Greenwood* v. *Darling, supra*, the provisions of § 1543 of the Code are cited. This contains certain provisions, and carefully provides that they shall not affect the chapter containing section 1998.

The same court at Montreal, following the authorities and reciting the 1998th article in a case where the goods were sold in England and delivered to the purchaser's shipping agent there, held that such a delivery was not a delivery such as was contemplated by the statute, and that the goods might be legally revendicated by the unpaid vendor in the hands of the Grand Trunk railway in Lower Canada, although more than fifteen days had elapsed since such delivery. *Bank of Toronto* v. *Kingston*, XII. L. C. Jurist, 216.

It is clear from the authorities that rights and property in goods obtained in Canada by contracts made there and the laws existing there, including the laws and rights to *revendicate* the same, follow the property, although it has gone into another jurisdiction, so long as such rights or property have not in any way been abandoned by the *voluntary act* of the party who possessed them in the original jurisdiction.

But inasmuch as there is sometimes a little confusion arising as to whether any particular question is one of remedy or one of right and title to the property, and as we cannot understand the confidence which the plaintiffs seem to have in their case upon any other ground than that they have mistaken a title and vested right for a mere matter of remedy, we deem it proper to make some further allusion to the distinction between these two, in order to show that, in this case, rights arising under the circumstances, determining the title to the property are not affected by its having crossed the line.

The authority of the writers is generally very explicit. See Story, Conflict of Laws, § § 272, 402, 401.

Jones on Comm. and Trade Contracts, § 23 ; *Bulkley* v. *Honold*, 19 How. 390, 392 ; *Walker* v. *Whitehead*, 16 Wall. 314-317 ; *Scudder* v. *Union National Bank*, 91 U. S. 406 ; *Pritchard* v. *Norton*, 106 U. S. 124-130 ; *Morgan* v. *N. O. M. & T. R. R. Co.* 2 Woods, 244-254 ; 8 Meyer's Fed. Dec. § 1200 ; *Green* v. *Sarmiento*, Pet. C. Ct. 74 ; S. C. 1 Abb. Nat. Dig. p. 796 ; *R. I. Central Bank* v. *Danforth*, 14 Gray, 123 ; *Williams* v. *Wade*, 1 Met. 82 ; *Judd* v. *Porter*, 1 Maine, 337-339 ; *So. Boston Iron Co.* v. *B. L. Works*, 51, Maine, 585 ; *Lindsay* v. *Hill*, 66 Maine, 212-217 ; *Smith* v. *Eaton*, 36 Maine, 298-306.

On the other hand it is true that what pertains to the remedy is governed by the *lex fori.* This doctrine and the reasons for it are fully set forth in Judge STORY's work already mentioned. Story's Conflict of Laws, § § 572, 575, 576 (note a). *Lennox* v. *Brown*, 12 C. B. 801.

There is still another reason which it seems to us is absolutely fatal to this attachment. The writ bore date on the 17th day of December, 1886. The direction of the officer was to attach the goods and estate of James Maguire, of Quebec, of the Province of Quebec, surviving partner of the firm of D. & J. Maguire, and doing business in the name of D. & J. Maguire, and while the writ was in that condition service was made upon the same day.

There is no question in this case, but that if the plaintiffs have any right to hold the goods in the hands of the alleged trustees, they must hold them as the property of the firm of D. & J. Maguire. No attachment however was ever made of the goods of D. & J. Maguire, but only of James Maguire. The addition of Charles Maguire's name cannot relate back so as to make the attachment good as against him, the amendment having been made after the entry of the writ in court. It was only the defendant, James Maguire's, property which was attached.

Now it is too well settled to need any authorities that the property of an individual in firm assets consists only of his

share of the assets remaining after the payment of all the debts of the firm, and, in this case, it appearing by the 6th allegation of the claimants that the firm was wholly insolvent, the attachment, even if not invalid by reason of all that has gone before and of what has already been urged, held nothing whatsoever in the hands of the alleged trustees. It has been often held that whether a trustee is chargeable depends upon the state of things existing at the time of service upon him. *Mace* v. *Heald*, 36 Maine, 135; *Williams* v. *And. & Ken. R. Co. Id.* 201; *Capen* v. *Duggan*, 136 Mass. 501.

Adding a new defendant, though he be another partner in the same firm, vacates an attachment of firm property. *Denny* v. *Ward*, 3 Pick. 199.

FOSTER, J. The plaintiffs bring this action of assumpsit against the defendants, lumber merchants residing at Quebec and there doing business under the firm name of D. & J. Maguire. Chase, Leavitt & Co. of Portland, are joined as trustees by reason of their having in their possession certain lumber shipped to them by the defendants.

The real contest is in reference to the title to the lumber in the possession of the trustees. The contention lies between the plaintiffs and the parties of whom the defendants purchased the lumber, who appear as claimants and assert that under the circumstances no title passed so as to prevent their claiming the lumber as their own.

These claimants at the time of the transactions out of which this suit arose were lumber merchants, residents of Canada, and carrying on business independent of each other at Louiseville on the St. Lawrence. The firm of D. & J. Maguire — the principal defendants — were also in the same business at Quebec. They had an agent, Arthur D. Ritchie, for the purchase of lumber in Canada, and Chase, Leavitt & Co. were there consignees of the lumber in Portland, who acted for said firm, received the lumber, entered it at the custom house, and gave a warehouse bond; subsequently an export bond was substituted, and the lumber shipped abroad as ordered by their consignors. Such was the general course of business.

At the time of the service of the writ in this case upon the trustees, the property in dispute, although in bond for storage, was constructively in their possession.   While there could be no actual attachment of the property itself by a state officer undertaking to take the property out of the custom house, either by paying the duties or giving an export bond, (*Harris* v. *Dennie*, 3 Pet. 304 ; *Conrad* v. *Pacific Ins. Co.* 6 Pet. 262) and therefore could not be come at to be attached, there is no reason why it might not be subject to trustee process while thus in the constructive control and possession of the trustees.   They could take it out of bond either by giving an export bond or by paying duties.

The lumber in question was purchased by the Maguires, through their agent about the first of November, 1886, at Louiseville, and was to be delivered at Doucet's Landing, a place about thirty miles from there down the St. Lawrence,— a terminus of the Grand Trunk Railway.

The contention on the part of the claimants is, that the terms of sale were cash less two and one-half per cent discount, or note on three months from date of shipment, and that the terms have never been complied with ; in other words, that the sales were conditional, and the conditions never having been performed no title vested in the defendants.

The plaintiffs on the other hand controvert the position of the claimants, asserting that the sales were unconditional,— or if conditional, that there has been such a waiver of any conditions by the claimants as would render the title to the lumber complete in the defendants and therefore subject to this process.

These questions ordinarily are for the jury as questions of fact. But this case is before the court on report, and we must therefore determine them upon such evidence and by such means of judging as the parties have seen fit to furnish us, applying the law to the facts as we find them.

There is no doubt that it is a well settled rule of law in this state that a sale and delivery of goods, on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title to the vendee till performance of

the condition and that in case the condition is not fulfilled, the vendor has a right to repossess himself of the goods, not only as against the vendee but also against his creditors, claiming to hold them under attachments. *Everett* v. *Hall*, 67 Maine, 498 ; *Brown* v. *Haynes*, 52 Maine, 580.

It is equally well settled that in the sale of personal property to be paid for by cash or by note on delivery, the payment of the money or the giving of the note is a condition precedent, and until that is done, or waived, the title does not pass from the vendor. *Seed* v. *Lord*, 66 Maine, 580 ; *Stone* v. *Perry*, 60 Maine, 50 ; *Whitney* v. *Eaton*, 15 Gray, 225.

If the delivery and payment were to be simultaneous, and the goods were delivered in the expectation that the price would be immediately paid, a refusal to make such payment would be such a failure on the part of the purchaser to perform his part of the contract as would entitle the seller to put an end to it and reclaim his goods. In such case the delivery may be regarded as conditional, and upon the purchaser's refusal to pay, the seller may at once reclaim the goods. The sale is not consummated, and the title does not vest in the purchaser.

No citation of authorities is necessary in support of the principle equally familiar and well founded that the vendor may waive the condition of the sale and by so doing pass the title, although the sale was originally a conditional one. He may waive the payment of the price, or agree to postpone it to a future day and proceed to complete the delivery. In that case it would be absolute, and the title would vest in the purchaser. A waiver is the voluntary relinquishment of some known right, benefit or advantage, and which, except for such waiver, the party otherwise would have enjoyed. And therefore in order for the title to vest in the purchaser when the sale has been conditional, it must in some way appear that the goods were put into his possession with the intention of vesting the title in him, or that there were such acts and conduct on the part of the seller, that such intention might be legitimately inferred therefrom. *Farlow* v. *Ellis*, 15 Gray, 232 ; *Paul* v. *Reed*, 52 N. H. 138.

Even in the case of a conditional sale of goods for cash there

are authorities which hold that a delivery apparently unrestricted is a waiver of the condition that payment is to be made before the title passes, although the seller has an undisclosed intent not to waive the condition. *Upton* v. *Sturbridge Cotton Mills*, 111 Mass. 446; *Haskins* v. *Warren*, 115 Mass. 533; *West* v. *Platt*, 127 Mass. 373.

But the doctrine which has the support of our own court upon this question, and which seems to be the correct and rational one, is, that even in a conditional sale the mere fact of delivery, without a performance by the purchaser of the terms and conditions of sale, and without anything being said about the condition, although it may afford presumptive evidence of an absolute delivery and of a waiver of the condition, yet it may be controlled and explained, and is not necessarily an absolute delivery or a waiver of the condition; but whether so or not is a question of fact to be ascertained from the testimony. *Seed* v. *Lord*, 66 Maine, 580; *Stone* v. *Perry*, 60 Maine, 51; *Farlow* v. *Ellis*, 15 Gray, 229; *Hammett* v. *Linneman*, 48 N. Y. 399; *Smith* v. *Lynes*, 5 N. Y. 43. "This doubtless would be good evidence of its waiver." *Dresser M'f'g Co.* v. *Waterston*, 3 Met. 18; *Furniss* v. *Hone*, 8 Wend. 247; *Carleton* v. *Sumner*, 4 Pick. 516; *Smith* v. *Dennie*, 6 Pick. 262.

Such waiver may be proved either directly, or inferentially from circumstances like any other fact. It may be proved "by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive." *Farlow* v. *Ellis*, *supra*.

Let us apply these rules to the present case.

The evidence of these contracts of sale comes entirely from the purchasers' agent, Ritchie. Neither claimant has testified. They were the parties with whom the contracts were made — the parties who afterwards delivered the lumber. We are therefore without the light which their testimony might possibly shed upon the facts in this case. Although, taking the testimony before us, we may be satisfied that the contracts were originally conditional,

nevertheless the evidence satisfies us of the fact that the vendors by their acts and conduct in reference to the property have waived any such conditions as may have originally attached to their contracts. This they had a right to do, and the evidence submitted fully warrants such conclusion. Nor are there any circumstances disclosed by the evidence which would modify the presumption of waiver by the unqualified and unconditional delivery which was made. There had been dealings of large amounts and of a similar character between the parties during the previous season. No custom or usage is shown that would delay for any number of days a cash payment. The lumber was sold to be delivered at Doucet's Landing. At the time of the delivery, which was some days after the trade was made, each claimant was present and knew that his lumber was being shipped out of the country on the cars for Portland, and made no objections of any kind. Neither claimant at the time and place of delivery mentioned any conditions, or asked for cash or note, nor was anything said as to the length of time the lumber should remain at the place of delivery. The delivery in each case was made directly to the purchasers' agent who made the contract of purchase. The purchasers not only at the time of making the contract but also at the time of delivery were doing a large business, and the evidence fails to show that they were known or even suspected to be in failing circumstances. Not more than three days were required from the time of the delivery for the certificate or bill of lading to be forwarded by the agent to the purchasers — the defendants — and the cash or notes to be returned. In this case the agent forwarded certificates of the amount of lumber of one of the claimants· on the seventeenth of November, and of the other on the twenty-fifth or twenty-sixth, of the same month. The failure of the defendants occured on the seventh of December, and on the tenth an assignment of their property was made to trustees under the laws of the Province of Quebec. Up to that time neither of these claimants had taken any steps or made any movement in reference to the pay for their lumber. Nearly a month had elapsed between the delivery and the first intimation that the title to the lumber had

not vested in the defendants. Other purchases had been made by the defendants from one of these claimants about the fifth of December, or just prior to the failure, and consigned to the same parties,— the trustees in this suit. But that consignment was stopped in Montreal by the vendor.

With these facts before us, notwithstanding the law of the place of the contract introduced and forming a part of the report in this case, we are irresistibly drawn to the conclusion reached in the case of *Smith* v. *Dennie, supra,*— a case very frequently cited by the courts,— and the language of that opinion, drawn by Chief Justice PARKER, might be appropriately applied here. "We are apprehensive," he says, "that to establish the right to reclaim under such circumstances, would widen the door for fraudulent contrivances, and that afterthoughts respecting conditions will spring up to intercept attaching creditors, when the sale was really unconditional, or at least when the vendor has thought his condition of so little importance as to be willing to abandon it and trust to the credit of the purchaser."

The case last cited was where a chattel was sold upon condition that the vendee should give an indorsed note, but was delivered without any express reference to the condition, and remained in the possession of the vendee eight days when it was attached by his creditors, the vendor having made no claim during that period either for the note or the chattel, and no reason was assigned for omitting such a claim ; and it was held that there was a waiver of the condition, so far as to warrant the attachment, and a verdict having been rendered to the contrary was set aside as against evidence.

But it is contended on the part of the claimants that the law of the country where the contract is made is the law of the contract, no matter where performance is demanded. And the learned counsel upon this branch of the case strenuously invokes the attention of the court to Article 1998 of the Civil Code of Lower Canada, an abstract of which with certain decisions of the court, have been introduced and form a part of the report.

By virtue of that law it is claimed that the unpaid vendor of personal property has the right, upon the insolvency of the

vendee, to revendicate or reclaim it. We do not understand, however, that this right attaches, according to any foreign law proved in this case, if the sale is made upon credit. Nor is there anything by which we are to be governed showing that the vendor may not waive his rights, to which he might otherwise be entitled, even under a conditional sale. No law or statute to the contrary being proved, we must assume that his rights in this respect would be the same as those existing by virtue of the laws of the country where the remedy is sought. *Carpenter* v. *Grand Trunk Railway Co.* 72 Maine, 390; *Lloyd* v. *Guibert*, L. R. 1 Q. B. 129.

It is unnecessary, therefore, to protract the consideration of any foreign law or statute in reference to the rights of these parties.

But the further objection is urged by the counsel for the claimants and trustees that there was no valid attachment of the partnership property of the defendants in the hands and possession of the trustees.

The writ bears date on the seventeenth day of December, 1886. It was sued out against James Maguire alone as principal defendant, instead of being against each of the partners. The direction to the officer was to attach the goods and estate of James Maguire, of Quebec, in the Province of Quebec, surviving partner of the firm of D. & J. Maguire, and doing business under said name of D. & J. Maguire, etc., and while the writ was in that condition service was made upon the trustees. On the first day of the term of court to which the writ was returnable, leave was obtained to amend the same by adding the name of Charles Maguire, as a party defendant, thus making the defendants, James Maguire and Charles Maguire, copartners under the firm name of D. & J. Maguire.

The service upon the trustees of the writ as it was at first made in which James Maguire, but no partner of his was then a principal defendant, did not create a valid attachment of the partnership property. As soon however as the writ was amended by joining Charles Maguire as a defendant,— the trustees still continuing to hold the property, then, all the necessary parties

being before the court, no rights of third parties having inter-vened,— the previous attachment became valid as to the property in the hands and possession of the trustees. *Sullivan* v. *Langley,* 128 Mass. 237.

The conclusion of the court therefore is, that the title to the thirteen car loads of lumber for which the claimants contend, at the time this suit was commenced, was not in the claimants, but that it had passed to and became vested in the principal defendants, and was subject to trustee process by the plaintiffs in this suit, as also the lumber of the other nine car loads, about which no contention is raised. As against the claimants the plaintiffs are entitled to costs from such time as they appeared as claimants of the property in dispute.

From the terms of the stipulation submitting this case to the law court, it is provided that if the trustees are chargeable for any of the lumber mentioned in their disclosures, they are to be charged in accordance with the terms of a written agreement entered into between the parties, dated May 6, 1887. The agreement is not found in the report, nor is it before us. The amount, therefore, for which the trustees are to be chargeable must be determined by the court below. They are entitled to their disbursements and services as a lien upon the property in their possession, and which has been put in bond in the custom house by them. They should be entitled to retain the sum of two hundred and forty-six dollars and ninety-five cents,— the amount advanced by one of the claimants, and which they are to repay to him,— it being advanced towards the expenses upon the lumber in dispute, and which the trustees agreed should be refunded.

*Judgment accordingly.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.