[No. 5221.]
[No. 2837 C. A.]

## HUSTON & BOYD v. PETERSON.

1. **Sales—Conditional Sales—Bona Fide Purchasers—Estoppel.**

    Cattle were sold by the owner on condition that the title should not pass to the buyer until the latter had paid an outstanding mortgage against them. The cattle were placed with a third person, and it was agreed that the buyer should pay for keeping them, but did not do so, and the owner did. The agreement of sale, in effect, called for cash upon delivery, and a portion of the cattle was delivered to the buyer, who gave a check for the amount of the mortgage, but the check was dishonored, and the owner was obliged to pay the mortgage. In the mean while, the buyer sold the cattle delivered at public sale, at which the seller was present and acquiesced in the sale. Held, that, the conditions of sale not having been complied with, the title never passed to such buyer; but the owner, having been present at the sale and acquiesced therein, will not be permitted to claim the cattle sold to bona fide purchasers at such sale, and the latter have a perfect title.—P. 192.

2. **Sales—Conditional Sales—Chattel Mortgages—Estoppel.**

    A person who bought cattle on condition that the title should not pass to him until he had paid an outstanding mortgage, executed a chattel mortgage upon a portion of the cattle to a third person to secure a pre-existing debt. Later the buyer, having given a check to the owner for the amount of the outstanding mortgage, was allowed to sell another portion of the cattle at public auction, at which the owner was present and acquiesced in the sale. Afterwards the check was dishonored. Held, that

the seller was not estopped from claiming that the buyer did not have title to the cattle described in the chattel mortgage, as the chattel mortgagees did not rely upon the conduct of owner as authorizing the giving of such mortgage, nor did they show that they relied upon his conduct as a ratification.—P. 193.

*Error to the County Court of Morgan County.*
*Hon. Tyler D. Heiskell, Judge.*

Action by Huston & Boyd against Peter Peterson. From a judgment for defendant, plaintiffs bring error.                              *Affirmed.*

Mr. L. C. STEPHENSON, for plaintiffs in error.

Mr. M. M. HOUSE, for defendant in error.

Mr. JUSTICE STEELE delivered the opinion of the court:

Plaintiffs below (and here) brought action in replevin against the defendant for the possession of certain cattle. The constable, on August 31, 1902, seized eight head of cattle branded "V-6," found in the possession of one Haas. Upon the trial, the justice rendered judgment for the defendant. The plaintiffs appealed to the county court. That court rendered judgment against the plaintiffs. They took the case by writ of error to the court of appeals

The plaintiffs in error claim that the finding and judgment are against the law and against the weight of the evidence.

On December 26, 1901, one Hans Bach gave to Huston & Boyd a chattel mortgage upon twenty steers to secure a note for $350.00, due August 1, 1902. About the time of the execution of the chattel mortgage, Hans Bach and the defendant entered into an agreement whereby the defendant was to sell to Hans Bach about thirty head of cattle bearing the V-6 brand. A notary public prepared the contract between the parties. The contract was lost before

the time of the trial. The notary testified that the agreement included land and cattle. He said:

"I understood it was that Hans Bach was trading his farm, where Peterson now lives, to Peterson, and Peterson was trading certain cattle, on which there was a mortgage, which was to be paid off by Bach. There was a place that Peterson had on Beaver Creek in the deal. After the agreement was written up, Mr. Bach said to Mr. Peterson: 'Now, Pete, you might still make me a bill of sale for those cattle.' Peterson said: 'I can make no bill of sale until the mortgage is paid off.'

"Q. In that agreement, were the cattle given to Bach? A. No, sir. It was subject to the payment of the mortgage.

"Q. The sale was made on the conditions that Bach would pay off this mortgage? A. Yes, sir.

"Q. After that, was it the agreement that he should have perfect title to the cattle? A. That was my understanding. When Mr. Peterson got the papers back, he was to give a bill of sale."

In the agreement were included but eleven head of steers branded "V-6." In January, 1902, Hans Bach held a public auction at his ranch and sold a number of cattle, some of them being included in the agreement mentioned. The defendant was present at this sale. He explained his presence at the sale and apparent acquiescence in the disposal of the cattle by Hans Bach, by saying that on the night before the sale Hans Bach gave him a check for the amount due upon the note secured by mortgage and mentioned in the agreement, and that he supposed that the check was good. The check was dishonored, and he was compelled to pay the note secured by the mortgage. He further testified that he never delivered possession of the steers to Hans Bach; that the steers remained in the possession of the per-

sons to whom he delivered them to be pastured until after the sale mentioned, and when he and Hans Bach took them, with other cattle, to the place of Chris Bach, where they were when seized by the constable.

The court found that Hans Bach did not have possession of the steers on December 26th, the date of the mortgage to plaintiffs; that they remained in the possession of Peterson; and that they were delivered to Chris Bach in February. The sale of the steers to Hans Bach was a conditional one; the condition being that Hans Bach should have title to them when the mortgage upon them should be released and returned to Peterson.

"A sale and delivery of goods on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title till performance of the condition, and if the condition is not fulfilled the vendor may repossess himself of the goods."—*Peabody v. Maguire,* 79 Me. 572.

In this case, there was no delivery of the cattle, unless the placing of the cattle, with Haas by Peterson and Hans Bach may be regarded as a delivery. The testimony discloses that it was agreed that Hans Bach was to pay for keeping the cattle, but that he did not do so, and that Peterson did pay for keeping them. The agreement in effect called for cash upon the delivery of the cattle, and a portion of them was delivered when a check for $241.00, the amount due upon the note secured by the mortgage, was delivered. The check was not paid. The conditions of the sale not having been complied with, the title to the cattle never passed. Having invested H. Bach with all the *indicia* of ownership, and having been present at the sale, Peterson would not be permitted to claim that he owned the cattle sold to *bona fide* purchasers at the sale, and as far as any claim of

Peterson and H. Bach is concerned, such purchasers had a perfect title.

Counsel claim that the action of Peterson in permitting the cattle to be sold estops him from claiming that H. Bach did not have title to the cattle mentioned in the mortgage of plaintiffs. There is no evidence that Peterson consented to the sale of any of the cattle mentioned in the plaintiff's mortgage. The cattle sold at the public sale were not those described in plaintiffs' mortgage. The plaintiffs' mortgage calls for certain steers branded "V-6." Peterson sold to H. Bach eleven of such steers. Bach's mortgage to plaintiffs calls for twenty steers. Moreover, plaintiffs did not rely upon the conduct of Peterson. The note was given for a pre-existing debt. Peterson's acts occurred long after they took the mortgage. While this conduct might properly have been considered by the court in determining the facts and rendering judgment, still the plaintiffs cannot invoke the doctrine of estoppel, because they did not rely upon the conduct of Peterson as authorizing the giving of the mortgage, nor did they show that they relied upon his conduct as a ratification.

The judgment of the court has sufficient support in the evidence to warrant us in upholding it; and no error in law having been shown, we affirm the judgment.                                    *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMPBELL concur.