WILLIAM W. CONOVER

*v.*

MARGARET RUCKMAN.

1. If the equity judge has allowed an interlocutory injunction, which afterwards clearly appears to him to have been improperly allowed, he may, of his own motion, set it aside at any time without any notice having been given of an application to dissolve. The statute, requiring eight days' previous notice of a motion to dissolve an injunction, has reference to applications to dissolve made by a party. But, on appeal from an order of dissolution, made under such circumstances, the appellate court will consider only the reasons assigned in the court below, for its judicial action.

2. Moneys in the hands of a sheriff, raised by him in pursuance of a decree of the court of chancery, are liable to seizure, by virtue of a writ of attachment.

Conover *v.* Ruckman.

3. *Crane* v. *Freese, 1 Harr. 305,* and *Davis* v. *Mahany, 9 Vr. 104,* approved; *Shinn* v. *Zimmerman, 3 Zab. 150,* and *Hill* v. *Beach, 1 Beas. 31,* explained..

On appeal from a decree of the vice-chancellor, reported in *Conover* v. *Ruckman, 5 Stew. Eq. 685.*

*Mr. Chilion Robbins,* for appellant.

The appeal in this case raises two questions:

1. Whether money due on a decree of the court of chancery, or about to be paid to, or paid to a sheriff on an execution in his hands to raise money, issued out of the court of chancery, is the subject matter of attachment, and can be attached as a right and credit of the defendant in attachment.

2. Whether an injunction can be dissolved without notice, and upon motion to dismiss the bill for want of equity.

Upon the first question:

It is abundantly established that an attaching creditor has such a lien as will enable him to set aside fraudulent conveyances or judgments affecting the property attached. *Hunt* v. *Field, 1 Stock. 46 ; Williams* v. *Michenor, Id. 520 ; Oakly* v. *Pound, 1 McCart. 180 ; Robert* v. *Hodges, 1 C. E. Gr. 299 ; Curry* v. *Glass, 10 C. E. Gr. 108 ; Rev. 42 §§ 1 3 ; p. 44 §§ 15, 17 ; Shinn* v. *Zimmerman, 3 Zab. 150 ; Crane* v. *Freese, 1 Harr. 405 ; Davis* v. *Mahany, 9 Vr. 104 ; Hill* v. *Beach, 1 Beas. 47 ; Turner* v. *Fendall, 1 Cranch 116 ; Armistead* v. *Philpot, 1 Doug. 231 ; Maxwell* v. *McGee, 1 Cush. 137.*

Upon the second question:

The rule is plain, that " notices of motions to dissolve injunctions shall be served eight days." *Rule 140.* And so is the statute, " that neither a motion to dissolve an injunction, nor any other special motion, shall be heard unless eight days' notice exclusive of Sunday, and the day of service shall have been given, &c." *Rev. 120 § 86.*

No notice was given of a motion to dissolve the injunction in this case. Without such notice and motion, the action of the vice-chancellor was not warranted. *Manhattan Manfg. and Fer-*

*tilizing Co.* v. *Van Keurin, 8 C. E. Gr. 251; 3 Dan. Ch. Pr. 1786.*

" No motion to dissolve an injunction before answer shall be entertained, except on the ground of want of equity in the bill." *Rule 122.*

*Mr. Jacob Weart,* for respondent.

The money due on this decree and execution in favor of the respondent, cannot be attached as the property of Elisha Ruckman, who was not a party to the suit either as complainant or defendant in the court of chancery, which court ordered the money to be raised for the respondent. *Conner* v. *Weber, 12 Hun 580; Thurber* v. *Blanck, 50 N. Y. 80.*

Money due on a decree of the court, is not a subject matter of attachment, and an attachment served upon money due on a decree and raised by execution is void. *Black* v. *Black, 5 Stew. Eq. 75; Shinn* v. *Zimmerman, 3 Zab. 150; Maxwell* v. *McGee, 12 Cush. 137; Hill* v. *Beach, 1 Beas. 47; Crane* v. *Freese, 1 Harr. 305; Davis* v. *Mahany, 9 Vr. 104; Turner* v. *Fendall, 1 Cranch 116; Ross* v. *Clark, 1 Dall. 354; Thompson* v. *Brown, 17 Pick. 462; Drake on Attachments §§ 251, 505, 506; Sir John Parrott's Case, Cro. Eliz. 63; Kerr* v. *Bower, Cro. Eliz. 186; Voorhees* v. *Sessions, 34 Mich. 99; Lightner* v. *Steinagle, 33 Ill. 515; Reddick* v. *Smith, 3 Scam. 451; Wilder* v. *Bailey, 3 Mass. 289; Dawson* v. *Holcomb, 1 Ohio 275; Morin* v. *Hawley, 9 Mo. 382.*

The general rule is, that a creditor at large has no standing in a court of equity by a creditor's bill until he has a lien at law by judgment, and has issued an execution and had it returned unsatisfied. This principle is so general that no citation of authority is required to support it.

In this state there is a class of cases holding that a creditor by attachment may acquire such a lien by attachment as to support a creditor's bill. *Hunt* v. *Field, 1 Stock. 36; Williams* v. *Michenor, 3 Stock. 520; Robert* v. *Hodges, 1 C. E. Gr. 299; Miller* v. *Jamison, 9 C. E. Gr. 41, 11 C. E. Gr. 404; Curry*

v. *Glass*, *10 C. E. Gr. 108; Thurber* v. *Blanck et al., 50 N. Y. 80; Mechanics and Traders Bank of Jersey City* v. *Dakin, 51 N. Y. 519.*

The injunction should also have been dissolved for want of equity in the bill. *Austin* v. *Brown, 1 Harr. 268.*

The opinion of the court was delivered by

DEPUE, J.

Margaret Ruckman obtained a decree in a foreclosure suit, wherein she was complainant, and John Dorn and his wife were defendants. Her bill was filed to foreclose a mortgage, made to her by Dorn and wife. Upon the decree, execution was issued, directed to the sheriff of the county of Monmouth. The sheriff had advertised, and was about to sell the mortgaged premises, to raise the money due on the decree. Conover sued out of the court of common pleas of the county of Monmouth a writ of attachment against Elisha Ruckman, as a non-resident debtor. The writ was directed to the coroners of the county, and was served on the sheriff with a view of attaching the money due upon the decree as the property of Elisha Ruckman.

In this condition of affairs, Conover filed a creditor's bill against Elisha Ruckman, Margaret Ruckman, and the sheriff, charging that the money for which the said mortgage was given, was the money of Elisha Ruckman, and that the mortgage was taken in the name of Margaret Ruckman for the purpose of covering up and concealing the property of Elisha Ruckman, with the intent to defraud his creditors. On filing this bill, duly verified, an injunction was granted, enjoining the sheriff from paying any money raised, or which might be raised, on the said execution, to the said Margaret Ruckman, or any other person, except to pay it into the court of chancery. A motion was made to dismiss the bill, on notice, and without any answer being filed, for want of equity in the bill. The motion to dismiss was denied, but the vice-chancellor, of his own motion, dissolved the injunction.

The appellant assigned, as one reason for reversal, that the order dissolving the injunction was irregular, in that it was made without the eight days' notice of a motion to dissolve, prescribed by the eighty-sixth section of the chancery act. *Rev. 120.* This reason cannot prevail. If the equity judge has allowed an interlocutory injunction which afterwards clearly appears to him to have been improperly allowed, he may, of his own motion, recall it at any time. Inasmuch as it was in his discretion, in the first instance, to refuse the injunction, he may, in his discretion, set aside the allowance of it if he is satisfied that it should not have been allowed. The section referred to has reference to applications to dissolve made by a party. But on appeal from an order of dissolution, made under such circumstances, the appellate court will consider only the reasons assigned in the court below for its judicial action.

The vice-chancellor vacated the injunction in this instance, on the ground that moneys in the hands of a sheriff, raised by him in pursuance of a decree of the court of chancery, are not liable to seizure by process of attachment, and that the plaintiff in the attachment suit, by the service of the writ on the officer, acquired no rights in or lien upon the moneys, and consequently had no case which would give him a standing entitling him to the assistance of the court.

In *Crane* v. *Freese, 1 Harr. 305,* the effect of the service of a writ of attachment on moneys in the hands of an officer, which he had raised by process of execution, was adjudicated upon by the supreme court. Freese was the sheriff of the county of Warren, to whom an execution had been issued out of the court of common pleas in favor of Aymar, against one Swayze. Crane sued out of the supreme court a writ of attachment against Aymar as a non-resident debtor. The writ of attachment was delivered to Freese as sheriff, and was returned by him with a certificate that he had, by virtue of that process, attached all the goods and chattels, rights and credits, of the defendant in attachment, viz., money in his own hands, collected by him as sheriff on an execution in favor of the defendant in attachment, against Swayze. The case was submitted to the supreme court, on a

state of the case agreed on, for its opinion thereon. The court held that the money in the sheriff's hands could not be attached as the money of the plaintiff in the execution, for the reason that it could not become his money until it was paid over to him, or in some other way designated as his, or appropriated exclusively to his use. But the court also adjudged that the writ of attachment was well served on the moneys due the plaintiff in the execution and in the sheriff's hands, as rights and credits of the defendant in attachment in the hands of the sheriff; and the duty of the officer, in that event, was pointed out. He was to obey the command of the writ of execution under which he raised the money—bring the money into the court out of which the execution issued, and give notice to the plaintiff in the attachment, or to the creditors, that he had done so; and the court would then control the application of the funds, and protect its officer in the discharge of his duty.

It will be perceived that in the case referred to, the processes were out of different courts—the writ of execution being issued out of the court of common pleas, and the writ of attachment out of the supreme court. The court was of opinion that moneys in the sheriff's hands, collected by him by execution, were rights and credits of the plaintiff in the execution within the meaning of the attachment act, and were subject to seizure as such by virtue of a writ of attachment against the plaintiff in the execution. Money received by an officer under process of execution may be collected of him by action at the suit of the plaintiff in execution (*Sewell on Shffs.* 436; *Dale* v. *Birch*, 3 *Camp.* 347), and come within the legal definition of rights and credits as much as debts due from private individuals. The court expressly held that such moneys were liable to seizure by virtue of a writ of attachment against the plaintiff in the execution, as rights and credits belonging to him, and that the court would give effect to the service of the writ of attachment on the officer with respect to such moneys in such a manner as not to involve a disobedience by him of the command of the writ under which the money was raised. The writ of *scire facias* issued against the sheriff as garnishee was dismissed, for the

Conover *v.* Ruckman.

reason that it would lead to embarrassment and confusion to permit one process of the court to intercept moneys raised on another while in the hands of the officer; but it was ordered that the sheriff should bring the moneys into court, to be paid over to the creditors in attachment, if no claim to them paramount to the title of the plaintiff in the execution should be interposed.

*Crane* v. *Freese* has never been overruled, or doubted, or called in question, in any adjudication in the courts of this state. It has been cited without any expression of dissent from its conclusions, and was directly approved and followed in the recent case of *Davis* v. *Mahany, 9 Vr. 104.*

The mode of procedure adopted in *Crane* v. *Freese* has generally been regarded as the settled practice in this state, and has been quite uniformly followed in similar cases. The vice-chancellor, conceiving that the decisions of the supreme court on this question were conflicting, felt bound, in making the order appealed from, by what he considered to be the course of decision in the court of chancery.

An examination of the decisions of the courts of this state on this subject will not disclose any disagreement with *Crane* v. *Freese* in this particular.

In *Shinn* v. *Zimmerman, 3 Zab. 150,* the attachment was issued against the plaintiff in a judgment recovered in the courts of Pennsylvania, and was served on the defendant in that judgment. The question for decision was stated by Chief-Justice Green to be "whether a judgment recovered in another state can be attached under the law of this state for the relief of creditors against absent or absconding debtors." The jurisdiction within which the judgment was recovered, and the person on whom the writ of attachment was served, distinguish this case from *Crane* v. *Freese.* The situation of the parties was such that the course of procedure adopted in that case could not be followed. The defendant in the attachment had recovered his judgment in another jurisdiction, and, as the chief-justice said, there is "no rule of law, no consideration of policy or courtesy, which would or ought to induce any court of Pennsylvania to suspend its process

and to withhold from one of its own citizens the recovery of a debt adjudged to be due, because after the recovery of the judgment, the debt has been attached under the process of this state." He further remarked that " it was obvious, moreover, that, if executions may thus be arrested, it would, with respect to judgments in this state, as well as elsewhere, present a ready mode of embarrassing the administration of justice and delaying the process of the courts."

The views expressed by Chief-Justice Green in *Shinn* v. *Zimmerman* are not inconsistent with those expressed by Chief-Justice Hornblower in *Crane* v. *Freese*. They are, in effect, the same as induced the court in the latter case to deny the power of the attaching creditor to have the attachment levied on moneys in the officer's hands, to be recovered of him by proceedings on *scire facias*—the embarrassment and confusion which would arise from permitting one process of the court to intercept moneys raised on another while in the hands of an officer—a difficulty which was obviated by the mode of procedure at that time adopted. In *Black* v. *Black, 5 Stew. Eq. 74,* the writ of attachment was served on the defendant in a chancery suit, against whom there was a money decree in favor of the defendant in the attachment suit. Service of the writ in that manner directly interfered with the power of the court of chancery to carry into effect one of its own decrees, and the service was declared inefficacious. In *Hill* v. *Beach, 1 Beas. 31,* lands held in trust for a firm were sold under a mortgage, and the attachment was served upon the surplus money remaining in the hands of the sheriff after he had paid over to the complainant in the decree the amount due him, and which the sheriff was ordered by his writ to bring into court. The chancellor held that this money might be attached, and protected the lien which was thus acquired. In his opinion, the chancellor observes that the case in hand was unlike a case in which money was paid into court under a decree or judgment, and by that decree decided to belong to a particular individual; but that observation was made with a view to distinguish that case from *Shinn* v. *Zimmerman.* The question whether money adjudged to be due to the defendant in the attachment, by a judgment or

decree, was liable to seizure under an attachment against him, was not before the court.

The practice established in *Crane* v. *Freese* has been followed too long to be disturbed. It is a practice which is in furtherance of the policy of the attachment act, which the legislature has declared "shall be construed in all courts of judicature in the most liberal manner for the detection of fraud, the advancement of justice, and the benefit of creditors" (*Rev. 55* § *75*), and effectually guards against embarrassments arising from conflicting or opposing jurisdictions. The opinion of Mr. Justice Scudder on this topic in *Davis* v. *Mahany* is so full and exhaustive that it is only necessary to refer to it, and to express our concurrence in his reasoning, and in the conclusion he arrived at.

We think this practice should be applied to the service of writs of attachment on moneys raised under decrees in chancery, and in the hands of officers by virtue of executions issued thereon. Between a decree in chancery and a judgment of a court of law there is no material difference in the nature of the adjudication. In each a court has adjudged that the money found to be due is due and payable to the successful party. Nor do the executions thereon differ in any important particular. By the execution on a decree, the sheriff is commanded to make the money by the sale of the mortgaged premises, or in some manner otherwise designated, and pay it over to the complainant or his solicitor; the execution on a judgment at law commands the sheriff to make the money recovered by the sale of the property of the defendant, and to have it in court on the return day to render to the plaintiff. Service of a writ of attachment on the sheriff having the money in hand will have no greater tendency to create embarrassments, or interfere with the proceedings of the court in one case than in the other. Under the course of practice pursued in *Crane* v. *Freese*, the money will be paid into the court by virtue of whose process it was raised, to be withdrawn only by the order or decree of that court. The injunction order in this case, in effect, merely required the money to be paid into the court of chancery, to be disposed of as that court might direct. The only difference in the situation of affairs in *Crane* v. *Freese*

and in the present case is, that in the former case the attachment was issued against the plaintiff in the execution, and in this case it issued against a third person. The fact that the title to the property attached is nominally in a third person is no obstacle in the way of proceeding against it by a writ of attachment against it as the property of the real owner. Considering the nature of the bill filed by the complainant, the object of his suit, and that the entire proceedings are in a court of equity, we think that no difficulties or embarrassments can, under such circumstances, arise out of conflicting jurisdictions.

The bill charges that the moneys represented by the decree were the moneys of the defendant in attachment, covertly put by him in the name of the complainant in fraud of his creditors, in contravention of the statute concerning fraudulent conveyances— a statute which Lord Mansfield said " cannot receive too liberal a construction, or be too much extended in suppression of fraud." *Cadogan* v. *Kennet, Cowp. 432, 439.* The bill further charges that the mortgagee instituted the foreclosure suit, and conducted it to a final decree to carry that purpose into effect. It prays that that fraudulent scheme may be arrested, and the money so illegally attempted to be diverted from the payment of honest debts be appropriated to the satisfaction of the claims of the creditors.

The case made by the bill, if sustained by evidence, is one that specially commends itself to the consideration of a court of equity for the relief asked, if it can be granted consistently with the rules and practice of the court. As a creditor at large, the complainant could have no standing in court to enable him to present his case; but we think he might acquire that position by a writ of attachment against the fraudulent debtor, properly served, and the service of such a writ may be made on a sheriff to whom the execution on a chancery decree was directed and delivered.

In considering this case, we have not overlooked the fact that the moneys directed to be raised by the execution were not actually in the hands of the sheriff when the writ of attachment was served, or when the complainant's bill was filed. The bill charges that the execution was issued and delivered to the sheriff, and that the sheriff was about to set up and sell the

mortgaged premises by virtue thereof. The question whether the service of the attachment was not premature is one not without difficulty. It was suggested, on the argument before this court, by one of the members of the court, but was not raised or discussed by counsel. The fact was mentioned by the vice-chancellor in his opinion, but the case was not decided by him on that ground, and counsel were not heard on that subject in the court below. For the reason already given, we have not examined or considered that question.

As the case stands, we think the order appealed from should be reversed, but without costs.

*Decree unanimously reversed.*