OLIVER SMITH

*v.*

WILLIAM B. REED et al.

[Decided October 9th, 1908.]

S. filed a bill of interpleader in chancery of New Jersey against R. & L. setting up that R. recovered a judgment against him (S.) in the United States circuit court, and that L. had attached the judgment debt in his hands by process out of the Camden circuit court of this state, and prays for an injunction restraining R. from issuing execution against him (S.) out of the United States circuit court on that judgment pending the interpleader suit.—*Held*, that an injunction will not lie, because the writ, if issued, would be an unlawful interference by a court of a state with the power of a court of the United States to enforce its judgment; the rule being that courts of different sovereignties cannot so interfere with each other even indirectly by injunction operating upon the parties litigant.

Heard on order to show cause why an injunction should not issue.

*Mr. Lewis Starr,* for the complainant.

*Mr. Thomas B. Hall,* for the defendant Reed.

*Mr. William T. Read,* for the defendant Lowry.

WALKER, V. C.

The bill in this case shows that the defendant Reed recovered a judgment in the United States circuit court for the district of New Jersey, against the complainant for $750 damages and $58.45 costs; that the issuing of an execution on the judgment was stayed upon the application of the complainant to set off against it a judgment recovered by him against the defendant Reed in the court of common pleas of Philadelphia, Pennsylvania; that the application was refused; that the defendant

Lowry caused to be issued against the defendant Reed an attachment out of the circuit court of the county of Camden, which the sheriff served upon the complainant and attached in his hands all the rights and credits, moneys and effects of the defendant Reed, and particularly the money due and owing to the complainant by the defendant Reed upon the judgment recovered in the United States circuit court. Then follows the usual averments in an interpleader bill that both defendants claim they are entitled to the money due and that the complainant is unable to determine to whom it belongs and is willing to pay the amount to such person as shall lawfully be entitled to it and to whom he may pay the same with safety, offering to pay the amount into court, and alleging that he does not in any respect collude with the defendants and that he has not been indemnified by them or either of them, but brings the suit of his own free will and to avoid molestation and injury. The bill is verified by the complainant's affidavit.

The defendant William B. Reed has answered and charges, among other things, that the attachment was not issued and levied in good faith, but by collusion between the complainant and the defendant Lowry for the purpose of preventing the defendant Reed from having execution against the complainant, Smith, upon the judgment of the circuit court of the United States; that the judgment in the Philadelphia common pleas, which is the basis of the complainant's claim, was recovered by him and Lowry and that Lowry assigned his interest in it to Smith, the complainant, to enable him to use it against his, Reed's, judgment in the United States circuit court.

The defendant Lowry has also answered and admits all of the facts contained in the bill and avers that by reason of his attachment he is entitled to priority over the claim of the defendant Reed upon his judgment.

The complainant also makes an affidavit, in which he says that it is not true as stated in Reed's answer that the attachment of Lowry against Reed was in any way or manner based upon the judgment against Reed entered in the Philadelphia common pleas court, nor that the complainant has assigned to Lowry the claim against Reed, nor that the claim upon which the at-

tachment proceedings of Lowry against Reed is based is in any way or manner owned by the complainant, nor is he interested therein.

The complainant seems to know how the alleged debt for which the attachment issued did not arise, which argues that he knows how it did arise, but he rather disingenuously fails to make any statement concerning that feature of the case.

The bill prays for an injunction restraining the defendant Reed from issuing execution upon his judgment in the United States circuit court or from collecting or selling or disposing of any of the real or personal property of the complainant, and that the defendant Lowry be enjoined from further proceeding in the attachment proceedings commenced by him against the defendant Reed so far as it may refer or relate to the moneys in the hands of the complainant due upon the judgment. Upon filing the bill an order to show cause was made why an injunction should not issue according to its prayer, with an *ad interim* restraint upon the defendant Reed, enjoining him from proceeding to advertise or sell any property of the complainant on any levy under any execution that might be issued on the judgment mentioned, and from collecting, selling or disposing of any of the real and personal property of the complainant, and that the defendant Lowry be restrained from further proceeding in the attachment proceedings against Reed so far as the same refers or relates to the moneys in the hands of the complainant due upon the judgment.

Upon the hearing of the order to show cause the files of this court in the cause therein depending wherein William B. Reed is complainant and Oliver Smith, Alfred Lowry and others are defendants, was introduced in evidence. In that suit the defendants Smith and Lowry (who are the complainant, one of the defendants in this suit) exhibited an answer by way of cross-bill against the complainant Reed (who is defendant in this suit), in which they set up that they, Smith and Lowry, were induced by Reed to enter into a certain written agreement dated June 10th, 1902, for the purpose of forming a corporation (which is also one of the defendants in that suit) for the manufacture and sale of soap, by virtue of certain false and fraudu-

lent representations made by Reed to them, and they pray in their cross-bill that the contract be declared void and for nothing holden, and that they may be relieved from it in so far as they are holden unto the complainant, and that the complainant be declared not ·to be entitled to any rights under the contract. Reed, besides filing a special replication denying the fraud, filed a supplemental bill in which he sets up that Smith and Lowry by their cross-bill have elected to rescind the contract and have claimed for themselves as individuals the ownership in the stock of the company formed to carry out the terms of the agreement of June 10th, 1902, and prays that Smith and Lowry be ordered and directed to release and discharge unto him all and every claim or demand they have against him arising out of any of the matters and things done or omitted to be done under the contract. Now, under the contract, Reed was to have $8,000 of stock in the corporation, to be paid for by a loan to him from Smith and Lowry, and the repayment of which he was to secure by life insurance policies amounting to $9,000, and a mortgage of $3,000 upon lands in Pennsylvania, the stock to be issued in· the name of Reed and held by the other parties. These conditions were performed, and it is not shown that Reed owes Lowry otherwise than on account of the transaction just mentioned. It will be noticed that Reed's indebtedness to Smith and Lowry under this contract was one to them jointly. Reed now alleges that Smith has assigned to Lowry his interest in the securities so that Lowry could be in a position to set off his claim against Reed, that being impossible while Reed's obligation was to them jointly, for, upon well-known principles, a joint debt cannot ·be set off against a several one.

In the matter before me it does not appear by competent proof that Smith and Lowry collude with each other for the purpose of preventing Reed's making out of Smith the judgment which he recovered against him in the United States circuit court. But, if the facts stated in the pleadings in *Smith* v. *Lowry et al.,* and in the answer of Reed in this case be true, then there is collusion between Smith and Lowry. What is the fact in this regard will, of· course, be made to appear upon the final hearing of the cause.

Passing from the question of collusion, which I am unable to decide in favor of the defendant Reed on this application, although the matter savors very strongly of it, I come now to the consideration of the power of this court to interfere with the process of the United States circuit court. The principal authority relied on by counsel for the defendant Reed, on this head, is *United States* v. *Johnson County, 5 Dill C. C. 207.* In that case a judgment had been recovered in the circuit court of the United States for the district of Iowa, against Johnson county in that state and district, for interest on certain bonds issued by the municipal corporation. Execution was issued and returned unsatisfied and demand was made upon the county officers to levy a tax to satisfy the judgment, and upon their refusal a *mandamus* was issued by the federal court in which the judgment was recovered, to which the county officials made return that they had been enjoined from levying the tax of a state court in a proceeding between the taxpayers and themselves. The supreme court of the United States held "that federal courts and state courts act separately and independently and in their respective spheres of action the process of the one cannot be enjoined by the other." It is elementary that no court can directly enjoin proceedings in another court; therefore, when proceedings in court are in effect enjoined, it is because of a restraint operating upon the parties. Although the language of the syllabus in *United States* v. *Johnson County,* just quoted, refers in terms to the inability of one court to enjoin another, the headnote is to be read in connection with the facts, which clearly show that the injunction was the usual one operating upon the parties and not one directed to the court. Said Mr. Justice Clifford, speaking for the United States supreme court (at *p. 195*) : "State courts are exempt from all interference by the federal tribunals, but they are destitute of all power to restrain either the process or proceedings in the national courts.   *   *   * Circuit courts and state courts act separately and independently of each other, and in their respective sphere of action the process issued by the one is as far beyond the reach of the other as if the line of the division between them was 'traced by landmarks and monuments visible to the eye.'   *   *   *   Viewed

in any light, therefore, it is obvious that the injunction of a state court is inoperative to control, or in any manner to affect the process or proceedings of a circuit court, not on account of any paramount jurisdiction in the latter courts, but because in their sphere of action, circuit courts are wholly independent of the state tribunals."

This case (*United States* v. *Johnson County*) is certainly an authority for counsel's contention.

The cases in our state courts are not in conflict with the doctrine of the federal courts upon the question under consideration.

In *Shinn* v. *Zimmerman, 23 N. J. Law (3 Zab.) 150*, it was held: "Money due on a judgment recovered in a court of record, either in this state or another state, cannot be attached in the hands of the defendant in such judgment on an attachment against the plaintiff therein." Chief-Justice Green, delivering the opinion of our supreme court in that case, said (at *p. 153*) : "Upon a question of conflict of jurisdiction, it is clear that the court which first acquires jurisdiction of the subject-matter of controversy is entitled to exercise it, and to enforce the execution of its judgment. If the court in Pennsylvania permitted the attachment to supersede the execution, it would in effect permit the process of the courts of this state to interfere with the execution of its own judgment. It is obvious, moreover, that if executions may thus be arrested, it would, in respect to judgments in this state, as well as elsewhere, present a ready mode of embarrassing the administration of justice and delaying the process of the courts."

Nor is the case of *Conover* v. *Ruckman, 33 N. J. Eq. (6 Stew.) 303*, in conflict with *Shinn* v. *Zimmerman, ubi supra.* While in *Conover* v. *Ruckman* it was held that moneys in the hands of a sheriff, raised by him in pursuance of a decree of this court, are liable to seizure under a writ of attachment, the principle annunciated in *Shinn* v. *Zimmerman* was expressly approved. Said Mr. Justice Depue, speaking for the court of errors and appeals, in *Conover* v. *Ruckman* (at *p. 309*) : "In *Shinn* v. *Zimmerman, 23 N. J. Law (3 Zab.) 150*, the attachment was issued against the plaintiff in a judgment recovered in the courts of Pennsylvania, and was served on the defendant in that judg-

ment.   *   *   *   The defendant in the attachment had recovered his judgment in another jurisdiction and, as the chief-justice said, there is 'no rule of law, no consideration of policy or courtesy, which would or ought to induce any court of Pennsylvania to suspend its process and withhold from one of its own citizens the recovery of a debt adjudged to be due, because after the recovery of the judgment, the debt has been attached under the process of this state.' "

In *Conover* v. *Ruckman* in this court (*32 N. J. Eq.* (*5 Stew.*) *685*), Vice-Chancellor Van Fleet held that there was an irreconcilable conflict between the decisions of the supreme court in *Crane* v. *Freese, infra,* and *Shinn* v. *Zimmerman, supra,* and, because the court of chancery had established the doctrine that moneys in the hands of an officer raised on execution were not liable to attachment at all, he dissolved an injunction which had been issued in aid of an attachment. In reversing the judgment in *Conover* v. *Ruckman,* the court of errors and appeals, adverting to *Shinn* v. *Zimmerman,* remarked (*33 N. J. Eq.* (*6 Stew.*) (at *p. 309*), that it was because the attachment in that case had been recovered in another jurisdiction that the doctrine of *Crane* v. *Freese* did not apply.

In the class of cases of which *Crane* v. *Freese, 16 N. J. Law* (*1 Harr.*) *305,* and *Davis* v. *Mahany, 38 N. J. Law* (*9 Vr.*) *104,* are examples, money in the hands of an officer raised on execution was allowed to be attached in favor of a creditor of the plaintiff, not as the money of the plaintiff, but as a right and credit of the plaintiff, the court in which the money was raised being left to apply it upon consideration of the claims of all the parties. It will be noticed that in these cases the process of execution upon judgments recovered was not arrested, but the moneys raised upon the executions were held to be subject to the rights of creditors. It will be noticed, too, that the attachments, and the execution upon which the moneys attached were raised, were all issued out of courts of the same state. As I understand it, courts deriving their powers from one sovereign cannot, even in the most indirect manner, affect the process or proceedings of the courts of other sovereigns, and that attachment will not lie out of a court of one state against moneys raised on execution

by process of a court of the United States or of another state. This view is noticed by Mr. Justice Scudder in the opinion in *Davis* v. *Mahany,* wherein he said (*38 N. J. Law (9 Vr.)* (at *p. 108*) : "If the plaintiff in execution, or person having a claim paramount to such plaintiff, or the creditors in attachment under which the right or credit has been levied upon, shall be entitled, the court will order payment according to the justice and right of the case. There will be no case of conflicting suits and opposing jurisdictions, but an honest and convenient appropriation of the debtor's property to the payment of his debts, if he be liable." It seems, then, that in *Davis* v. *Mahany* attachment was permitted to be levied upon moneys in the hands of a constable made under execution for the defendant in another action before another justice of the peace in which the defendant in attachment was plaintiff, because there were no opposing jurisdictions, as there would have been had the money attached been raised upon process out of a court of the United States or of another state. Anyhow, all that was decided in the class of cases now being discussed was, that the moneys raised upon execution were liable to attachment as rights and credits of the plaintiffs in those writs, the moneys not being theirs until paid over to them, and neither these cases nor any others that I have been able to find are authority for the proposition that process of execution upon a final judgment may be arrested for the benefit of a creditor of the plaintiff in execution.

The cases cited on behalf of the complainant and the defendant Lowry do not bear out the contentions made in their behalf. One of the cases will be noticed. Counsel for the complainant in his brief asserts that interpleader lies in favor of a person sued in a United States court and attached in a state court, and cites *McWhirter* v. *Halsted, 24 Fed. Rep. 828.* Upon examination the case will be found not to be authority for the proposition asserted. The facts were these: Halsted, Haines & Company, of New York, on July 12th, 1884, made a deed of assignment to Lewis May for the benefit of their creditors. On the same day Deering, Milliken & Company caused a writ of attachment to be issued out of the supreme court of this state against Halsted, Haines & Company under which the sheriff of Essex attached a debt due

from McWhirter & Company to Halsted, Haines & Company. On December 3d, 1884, Lewis May, assignee of Halsted, Haines & Company, commenced an action in the United States circuit court for the district of New Jersey against McWhirter & Company. On January 21st, 1885, McWhirter & Company filed their bill of interpleader in the United States circuit court, acknowledging their indebtedness to Halsted, Haines & Company, averring their readiness and willingness to pay the same to whomever should be determined to be entitled to it, alleging that the assignee claimed it and also the attaching creditors. While Justice Nixon in the opinion seems to have held that the case was properly one for interpleader, he held distinctly that he could not grant any injunction against the attachment proceedings in the New Jersey supreme court, putting the decision of that question upon a federal statute which expressly prohibits a court of the United States from issuing an injunction to stay proceedings in a state court, except in cases of bankruptcy. He remarked (at *p. 830*) : "Nor is there any difficulty in granting an injunction against the plaintiff in the action at law in this court restraining him from further proceeding therein. He is under its control. But it is different in regard to an injunction against the parties to the attachment proceedings in the state court. They are there pursuing a remedy given by the law against the property of a non-resident debtor, and *Rev. Stat.* § *720,* expressly prohibits a court of the United States from issuing the writ of injunction to stay proceedings in any court of a state, except where the injunction may be authorized by any law relating to proceedings in bankruptcy." He concluded by observing that he was constrained to decline an injunction against the plaintiffs in the attachment proceedings in face of the federal statute. Had the statute not been in existence and had the court been urged to refuse the injunction because of want of power in the federal court to restrain proceedings in the state court, he must, of necessity, it seems to me, have refused the writ upon the authority of *United States* v. *Johnson County,* which, it appears, must have bound him.

The ruling of Judge Nixon, just adverted to, was on motion for a preliminary injunction. The cause afterwards came on for

final hearing before Judge Wales (*10 N. J. L. J. 91*), and the bill was dismissed on demurrer because any decree ordering the parties to interplead would be useless unless they could at the same time be enjoined from further prosecuting the attachment suit, which was precisely what was forbidden by the federal statute.

In *Central National Bank* v. *Stevens, 169 U. S. 432,* it was held that a state court was powerless to grant an injunction against enforcing a decree of a federal court which had obtained complete jurisdiction before suit begun in the state court, and that to deprive a court of the power to execute its decree is essentially to impair its jurisdiction. I do not understand this case to be disapproved by the opinion of Vice-Chancellor Bergen in *Shaw* v. *Frey, 69 N. J. Eq. (3 Robb.) 321,* wherein he says (after citing *Central National Bank* v. *Stevens*) (at *p. 324*) : "The doctrine that a state court may never restrain a litigant in a federal court cannot, in my opinion, be supported by the adjudications of the supreme court of the United States." And (at *p. 325*) : "All of these cases (*Central National Bank* v. *Stevens* and other cases) present different conditions of fact, but the rule established vindicates the right of a federal court to complete its judgment by execution, but I can find no express adjudication holding that a state court having jurisdiction over the party is without power to restrain a litigant in a federal court, no federal question being involved, until he shall make such discovery of evidence as the rules of equity require."

Certain it is that courts of the United States have held that final process upon their judgments may not be arrested by injunction out of the state courts operating upon the parties, and I understand, also, that the decisions of our state courts are to the same effect.

Many other grounds have been urged by counsel for the defendant Reed in favor of the denial of an injunction in this cause, and some of the reasons appear to be meritorious. However, I have not considered them, because the proposition just discussed is to my mind controlling, and its decision must necessarily be dispositive of the question under consideration.

For want of jurisdiction in the court of chancery to restrain

the process of execution on a judgment in the United States circuit court, the *ad interim* restraint heretofore granted in this cause must be dissolved and the rule to show cause discharged, with costs.