Property in this state, belonging to a non-resident lunatic, is the subject of the controversy. Anna Wincklhofer, of California, was adjudged a lunatic in the superior court of that state and Pauline M. Hoffman was appointed guardian of her person and property. Mrs. Hoffman was later appointed by the orphans court of Essex county guardian of the property of the lunatic in New Jersey, pursuant to section 2 of An act concerning idiots and lunatics. Comp. Stat., p. 2783. The lunatic's only property is a parcel of land in the city of Newark.
In this situation, Mrs. Kahn, who also is a resident of California, sued out of the Essex circuit court an attachment against the lunatic based upon a California judgment. By *Page 172 
virtue of the writ, the sheriff attached her property in Newark and an auditor was appointed and is now collecting the rents.
The guardian now files her bill against Mrs. Kahn and the auditor in attachment. She prays that this court may order a sale of the lunatic's lands pursuant to sections 4 and 7 of the statute. She further prays that Mrs. Kahn be restrained from further prosecuting the attachment action and that the auditor, pending final hearing, be restrained from collecting the rents or selling the property.
The application of a guardian of a lunatic for authority to sell lands is properly summary and ex parte. Usually it is made by petition but the present bill is sufficient for the purpose. There will be a reference to a master as directed by section 7 and by chancery rule 239.
The principal question argued by counsel relates to the attachment and the motion to enjoin the auditor. At common law in England, the king, as parens patrice, had custody of lunatics and their property and he was accustomed by warrant under his sign manual to delegate such matters to the chancellor. Upon the appointment of a committee, the property of the lunatic constituted a fund within control of the chancellor acting in virtue of the king's warrant, although the fund was not in the court of chancery. In re Farrell, 51 N.J. Eq. 353.
Our earliest New Jersey act relating to lunatics (Patterson125), directed that the chancellor should have the care of lunatics and provide for the safekeeping of them and their property. By supplement, a few years later, it was enacted that the chancellor, having determined the fact of lunacy, should transmit the record to the orphans court and that the orphans court should appoint a guardian. Although the guardian of a lunatic has no title to the property of his ward either in trust or otherwise, yet he is caretaker of the estate. Cooper v.Wallace, 55 N.J. Eq. 192. The lunatic's property within the state becomes a fund under control of the orphans court. In reFarrell, supra.
May a creditor interfere with this fund or with the orphans court's administration of it by attaching it? In Van Horn *Page 173 
v. Hann, 39 N.J. Law 207, Mr. Justice Reed held on abundant authority that an action at law lay against the lunatic himself and not against his guardian. The question did not there arise whether the creditor, having recovered judgment, could proceed to execution and levy, or whether his only remedy was an application to the court having charge of the lunatic's estate to direct the guardian to pay the judgment. He did say, however, in reference to the high court of chancery of England, "in instances where the court refused to apply property to the lunatic's debts, on account of insufficiency of the remainder for his support, the court admitted that all the lunatic's property could be reached by the process of the common law courts and that equity would not restrain. Ex parte Dikes, 8 Ves. 79; Ex parte Hastings, 14 Id.182." But the weight of the English authorities is to the contrary.
In Ex parte Dikes, Lord Eldon had before him a petition for the sale of a lunatic's property to pay debts. In the course of the discussion he said: "I cannot direct a creditor to take the leasehold estate on execution; but if they will, I cannot restrain them." In Ex parte Hastings, the same chancellor said that the creditors could not touch funds in the committee's hands, but they might put the lunatic in jail and sequester his living. In re Winkle (1894), 2 Ch. D. 519, the court said: "The position of affairs is that the property of this lunatic is subject to the control of the court by the appointment of a receiver. It is the old story: A judgment creditor of the lunatic has obtained execution, but the execution creditor is not entitled, as the law stands, to take the property of the lunatic away from the jurisdiction of the court with the possible result of sending him to a pauper lunatic asylum. Subject, however, to the lunatic being properly maintained, the creditor is entitled to the property. That has been the settled law as long as the court of chancery has existed and we are not going to alter it." After the appointment of a committee, the lunatic's creditors have no remedy against his estate except by petition to the court of chancery. 19 Halsbury's Laws of England 440; In re Pink
(1883), 23 Ch. 577; In re Pountain (1888), 37 Ch. 609; Inre Plenderleith (1893), 3 Ch. D. 332; Hunt v. Hunt
(1906), 2 Ch. D. 295. *Page 174 
Chancellor Williamson in Matter of Dey, 9 N.J. Eq. 181,
considered the power of the court to protect the lunatic's property pending the lunacy inquiry. He said that where a sale under execution is about to take place, the court will interfere (by injunction) if it is necessary and proper.
Property in custodia legis is not subject to seizure on attachment or execution, although the defendant's interest in the property may be attached. Crane v. Freese, 16 N.J. Law 305;Conover v. Ruckman, 33 N.J. Eq. 303. For example, money raised on an execution and held by the sheriff, cannot, by virtue of an attachment, be taken out of the sheriff's hands; but the sheriff must retain it despite the attachment and pay it into court in the cause in which the execution issued. The same rule applies to property in the hands of a receiver. "The court never allows any person to interfere either with money or property in the hands of its receiver, without its leave, whether it is done by the consent or submission of the receiver or by compulsory process against him." De Winton v. Mayor of Brecon, 28 Beav. 200. The moment a receiver is appointed, the property which he should take into possession is considered to be in custody of law so as to preclude interference by others. Generotzky v. Barnay HotelCo., 85 N.J. Eq. 63. The guardian of a lunatic appointed under our statute is an agent of the state which acts through the instrumentality of the orphans court. At the time Mrs. Kahn sued out her attachment, the lunatic's property was already in the custody of the orphans court. Acting under the writ of attachment and his appointment as auditor, the auditor has taken possession of the real estate away from the guardian and is now collecting the rents and proposes to sell the property. This action by the auditor is not legally justifiable.
Probably the guardian could obtain relief by applying to the circuit court for an order directing the auditor to surrender the property, but I am satisfied that chancery has jurisdiction of the matter auxiliary to its jurisdiction to order a sale. The court necessarily has power to prevent interference with the property by a third party. I will advise an order which will be effective to bring about restoration of possession of the property to the guardian. I do not know *Page 175 
whether it should assume the form of an injunction restraining the auditor from further collecting rents or selling the property, or whether it should require Mrs. Kahn to consent to an order by the circuit court directing the auditor to yield possession.