12 N.J. Super. 418 (1951)
79 A.2d 728
ARTHUR MAY, PLAINTIFF,
v.
WALTER A. HUFF AND ARCHIE V. SHIPMAN, ROBERT V. SHIPMAN AND MILDRED J. SHIPMAN, CO-PARTNERS DOING BUSINESS AS SHIPMAN MANUFACTURING COMPANY, DEFENDANTS.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided March 21, 1951.
*420 Mr. Joseph W. Tumulty, attorney for plaintiff.
Messrs. Stein and Feinseth, attorneys for defendants, Archie V. Shipman, Robert V. Shipman and Mildred J. Shipman, co-partners doing business as Shipman Manufacturing Company.
TENENBAUM, J.C.C.
The defendants in the above entitled cause, Archie V. Shipman, Robert V. Shipman and Mildred J. Shipman, co-partners doing business as Shipman Manufacturing Company, have applied to the court for an order to quash the writ of attachment obtained by the plaintiff, and to vacate a levy thereunder made, urging for their success the following reasons:
(1) Because the affidavit, upon the basis of which the order for the writ of attachment was issued, fails to set forth sufficient facts to show fraud.
(2) Because the alleged acts, promises and representations of Walter A. Huff are not binding upon the defendants, Archie V. Shipman, Robert V. Shipman and Mildred J. Shipman, co-partners doing business as Shipman Manufacturing Company.
(3) Because the affidavit fails to set forth any claim against the defendants, Archie V. Shipman, Robert V. Shipman and Mildred J. Shipman, co-partners doing business as Shipman Manufacturing Company.
(4) Because at the time of the levy under the writ of attachment, the goods and merchandise, which were attached, were in transit in the custody of Denver-Chicago Trucking Company, Inc., a common carrier.
*421 (5) Because the goods and chattels, which were levied upon, are the goods and chattels of these defendants, and the affidavit fails to set forth any claim against these defendants.
(6) Because the goods and chattels which were levied upon are the goods and chattels of these defendants, and the plaintiff has no claim against these defendants.
Since challenge is made in some aspects to the plaintiff's factual contention as disclosed by the affidavits, it becomes necessary to harvest, from all the affidavits, the facts for a proper disposition of the motion.
It is admitted that the defendant company, through Walter A. Huff, the other named defendant, entered into a written contract with the plaintiff for the sale and purchase of 100 vending machines at $29.50 each, and paid on account thereof the sum of $1,450, the balance of which was to be paid upon delivery. Simultaneously with the execution of that agreement, Huff entered into a written agreement with the plaintiff to secure locations for the machines within two weeks from the making thereof, which was on September 15, 1950.
The defendants seek to avoid the conduct of Huff on the grounds that he was (a) an independent contractor, (b) that if he was the defendants' agent, his authority was limited by an expression contained in the written agreement between May and Shipman, of which the plaintiff had knowledge.
Was Huff's conduct fraudulent, and if so, is that fraud imputable to Shipman? I have no hesitancy in determining that the conduct of Huff patently discloses that he practiced a fraud upon the plaintiff. This result is readily reached from the fact that the inducement for the plaintiff to execute the agreement between him and Shipman was the written understanding that Huff would secure locations for the machines within a fixed period of time. The plaintiff made several inquiries of Huff to ascertain if the locations were available, and admittedly they were not, yet Huff permitted the machines to be shipped from California to him.
*422 It must be borne in mind that the plaintiff could have purchased the machines for a lesser sum if he secured his own locations, but he chose to pay the greater price to have locations available for placement upon arrival. Huff knew that the plaintiff relied upon his representations to secure locations.
Whether Huff was an agent or an independent contractor presents some difficulty for determination. However, for the purpose of this motion all facts and legitimate inferences to be drawn therefrom must be resolved in behalf of the plaintiff.
The affidavit of the plaintiff discloses that on four separate occasions he wrote the defendant Shipman, advising them of the failure of Huff to secure the locations as agreed, and that the receipt of each of the letters was acknowledged by Shipman. The affidavit reveals that the first letter of the plaintiff was dispatched on October 3, 1950, which was some eight days before Shipman shipped the machines. The next letter was dispatched on October 11, 1950, which was on the same day the machines were shipped, and the other two letters were sent during the month of October, 1950.
The defendant Shipman, in his affidavit, disputes receipt of the plaintiff's communications. This disputed factual contention must be resolved for the purpose of this motion in favor of the plaintiff. Thus adopting as a fact the transmittal and acknowledgment of the letters, and particularly the one of October 3, 1950, it must be assumed that Shipman knew of the existence of the understandings between Huff and May. To this must be added the portion of the advertisement in the Jersey Journal,
"Routes established for you in restricted territory both now (italics mine) and future expansion."
I am aware of the principle of law advanced by Shipman that in fraud the representation must be as to a present or pre-existing fact, and it is urged that the securing of locations is a thing to be done in the future. The cases cited *423 by the defendant are in substantiation of that principle of law many times enunciated by our courts of last resort, but upon the facts are clearly distinguishable from those here involved. The public announcement in the Jersey Journal indicated that locations were presently available and hence all that remained to be done in the future was merely the selection as to which of the existing locations were to be enjoyed by, and assigned to May, and this allocation of locations was to have occurred within a fixed period of time and prior to the receipt of the machines; manifestly Huff did not possess that which he represented he had at the time of the entry into agreement with the plaintiff.
I am constrained that there is ample in the plaintiff's affidavit and from the advertisement in the Jersey Journal to hold at least Huff had the apparent authority to enter into a location agreement with the plaintiff, and if this be so, Shipman, the principal, cannot escape the fraudulent conduct of their agent. Series Publishers, Inc., v. Greene, 9 N.J. Super. 166 (App. Div. 1950); Duralith Corp. v. Van Houten, 113 N.J.L. 374, 174 A. 484 (E. & A. 1934).
All that is required of the plaintiff in connection with this motion is that the affidavits spell out a prima facie cause of action, which has been done. Mueller v. Seaboard Commercial Corporation, 5 N.J. 28, 73 A.2d 905 (1950).
The Attachment Act and specifically R.S. 2:42-87 proclaims that it "shall be liberally construed for the detection of fraud." To do otherwise would leave the act impotent and permit debtors to escape from the consequences of their conduct and just obligations. To accomplish that purpose, the courts have permitted affidavits upon which the attachment issued to contain hearsay statements of an alleged event, which is a radical departure from the established law of evidence.
The machines were shipped by motor truck from California and consigned to Jersey City, and delivered to the freight terminal of the carrier Denver-Chicago Trucking Company, *424 Inc., at Secaucus, New Jersey. The carrier demanded bills of lading from the consignees for the purpose of making delivery. The consignees refused to accept the machines, and thereupon the transition took place, so that the goods were no longer in transit and were in warehouse, and in such posture were subject to levy.
The affidavit submitted by the defendant of Donald S. Johnstone, an employee of the Denver-Chicago Trucking Company, Inc., discloses that the machines were consigned to addresses in Jersey City, that the same had reached the trucking company's terminal at Secaucus, New Jersey, and upon arrival the consignees were notified thereof "and were requested to present" the original uniform order bills of lading properly endorsed, but the same were never delivered to the trucking company.
When did the transition from carrier to warehouseman take place? The answer to the question upon the facts involved appears to be one of first impression in this State. The holdings are at variance in the several jurisdictions, but the Massachusetts doctrine is most appealing in logic. It holds that when goods have reached their destination and are placed in a position of reasonable safety, ready for delivery to the consignee, and the consignee fails, refuses or neglects to seek delivery into him, the carrier's duty as carrier terminates and that of warehouseman begins. 13 C.J.S. Carriers, page 304, sec. 153.
By thus electing to invoke the Massachusetts doctrine, I hold that the goods were not in transit and, therefore, were unable to escape a levy under attachment.
Motion for the defendant to quash the writ of attachment and vacate the levy is accordingly denied.