28 N.J. Super. 405 (1953)
101 A.2d 17
ORIGINAL R. & R. EMPIRE PICKLE WORKS, INC., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
PRODOTTI ALIMENTARI, G. ARRIGONI & C., SOCIETA PER AZIONI, A CORPORATION, DEFENDANT-APPELLANT. WHITEMAN FOOD PRODUCTS COMPANY, A PENNSYLVANIA CORPORATION, APPLYING CLAIMANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided November 13, 1953.
*407 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Saul J. Zucker argued the cause for plaintiff and applying claimant (Messrs. Kristeller & Zucker, attorneys).
Mr. Samuel H. Nelson argued the cause for defendant-appellant (Mr. Victor Ruskin, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The plaintiff, Original R. & R. Empire Pickle Works, Inc., brings this action of attachment against the defendant, an Italian corporation. Whiteman Food Products Company was admitted as an applying claimant under the attachment. Original and Whiteman, each, claim to have bought foods of defendant, under contracts with it which defendant allegedly broke. On the breach, plaintiff attached certain of these foods shipped to Whiteman. Defendant then moved to quash the attachment and to vacate the order admitting Whiteman as an applying claimant, and from orders denying the motions, defendant appeals.
There are four main questions. The first is whether the orders are appealable either under R.R. 2:2-3 (a) (3) upon the ground that the court below had no jurisdiction over the subject matter; or under R.R. 4:88-7 on the ground that, even though the procedure is now in the rules, it is still a statutory proceeding. Cf. Mueller v. Seaboard Commercial Corp., 5 N.J. 28 (1950). We have decided to pass the point. Had leave to appeal been sought under R.R. 2:2-3 (b), we would have granted it; for if the appeal were fully sustained, it would terminate the action. Moreover, *408 there has been referred to us an application for a rehearing of the appeal in Whiteman Food Prod. Co. v. G. Arrigoni & C., etc., 27 N.J. Super. 359 (App. Div. 1953), heard by another part of the Appellate Division (one of whose members has since retired from the bench). In that case a prior attachment of the very merchandise attached here was quashed. The case involved not only a number of the questions before us, but also the same parties, the plaintiff in that action being the applying claimant here and the applying claimant there being the plaintiff here. We may say, respectfully, that in our view certain matters, including observations of the County Court as to the new practice in attachment actions with regard to the amending and supplementing of affidavits, require reconsideration, and we therefore grant the rehearing. It may be, however, that since in this opinion we sustain the second attachment, questions as to the first attachment are moot.
The second question is whether the decision in the first attachment action bars the action here. The question was not raised below, and in view of the fact that the application for a rehearing has been granted, we shall not pass upon the point. As to whether the doctrine of res judicata can be invoked for the first time on appeal, see Epstein v. National Casualty Company, 1 N.J. 409 (1949); 4 C.J.S., Appeal and Error, § 233, p. 452; but see McMichael v. Boray, 90 N.J.L. 142 (E. & A. 1916), where, however, the doctrine was laid hold of in order to sustain the judgment below  not, as here, to upset it. In general, see Ex-Cello Corporation v. Farmers Cooperative Dairies, 28 N.J. Super. 159 (App. Div. 1953).
The third question goes to the sufficiency of Original's and Whiteman's affidavits. How much of his claim need a plaintiff put in his affidavit to entitle him to a writ? Under the Attachment Act (R.S. 2:42-1 et seq.), which was in effect prior to 1948, the court on a motion to quash a writ of attachment ordinarily would not deal with the validity of the plaintiff's claim. R.S. 2:42-5 required the affidavit to state merely that defendant "owes to plaintiff a debt, *409 specifying as nearly as practicable the amount thereof." To try the validity of a claim on a motion to quash the attachment would have (so it was held) "deprive[d] the plaintiff of his right to trial by jury in case the claim is contested, and it would require a clear case of abuse of the process of attachment to justify the court in interfering in this summary way." Singer v. Schapiro, 133 N.J.L. 133 (E. & A. 1945). Whether these considerations apply to the present rule need not be decided.
There was another attachment statute also in effect up to 1948, formerly found in the Practice Act, and later appearing as R.S. 2:42-72 et seq. That statute contained a provision, R.S. 2:42-72 (b), applicable to certain actions, requiring the plaintiff to specify in his affidavit "the nature and particulars of" his action.
In 1948 a single Attachment Act, N.J.S.A. 2:42-86 et seq., was enacted in lieu of the two statutes then on the books. It incorporates in N.J.S.A. 2:42-88 the provision italicized above. On January 1, 1952 Title 2A became law, erasing that provision from the statutes. Nevertheless R.R. 4:77-1 requires the affidavit to contain "proof to the satisfaction of the court, establishing the plaintiff's right to the writ." Certainly the law will place no heavier demands upon the plaintiff than that he set up in the affidavit a bare prima facie case. An attachment may be no remedy, unless speedy, and the law therefore does not call for plenary proof. Mueller v. Seaboard Commercial Corp., 5 N.J. 28, supra, construing N.J.S.A. 2:42-88.
With respect to the affidavit submitted in Original's behalf, the defendant's principal point is that it does not establish, through competent evidence, that Braun Bros. Food Corp. was the defendant's agent. We need not deal with the proof in detail. The matter is too clear. Defendant's letter to Original of October 16, 1952, identified Original's contract No. 21267 and specified at length deliveries made thereunder by defendant. Besides it referred to "your contract and * * * your option * * *." Clearly it makes out a prima facie case that defendant ratified Braun's *410 actions on its behalf under contract No. 21267  both with respect to plaintiff's order for 2,000 casks of gherkins and plaintiff's option for an additional 1,000 casks.
Another matter urged by defendant is that when Original incorporated in the affidavit the above-mentioned letter of October 16, 1952, it accepted defendant's assertion therein that a "heat wave in Italy * * * destroyed all crops." This, defendant claims, excuses it from performing its contract with Original. We need not pass upon the point except to say that such an excuse is a matter of defense. See Duff v. Trenton Beverage Co., 4 N.J. 595, 606 (1950); 6 Williston on Contracts (rev. ed.), sec. 1937. Surely Original never admitted that defense. Need we then require a denial of it on the record, before plaintiff makes out a prima facie case? At all events, the assertion of the defendant in the letter was a palpable exaggeration. The crops were not all destroyed; the record here establishes very substantial shipments of those crops.
As to the affidavit submitted in behalf of the applying claimant, Whiteman, defendant's argument is that Whiteman's alleged contract is predicated upon the existence of 1952 crop (that is, a crop commencing July 1952), out of which the order could be filled. However, Charles Gruber, who is (as appears by the exhibits attached to the affidavits) commercial director for the defendant, wrote Whiteman on August 14, 1952 this:
"CUTTINGS: We might be able to reach [that is, ship you] 400 barrels but the prices are higher than we anticipated. After you left the news about the quantity of the crop became worse and worse. It is now certain that there is definitely a short crop and I congratulate you on your contract, because prices have gone in the meantime skyhigh and you have been very prudent and lucky to close the deal so early when prices were still lower. We can sell to-day at infinitely higher prices, but are of course keeping the quantities you ordered reserved for you at contract prices. I should be obliged, however, for early shipping instructions as per enclosed list." (Italics inserted)
We cannot dismiss the italicized statement in this letter as an "optimistic and possibly false statement" (27 N.J. Super., *411 at p. 368). Why should we, in determining whether a bare prima facie case has been made out, assume that defendant in this letter was dealing only in optimistic conjectures as to a crop yet to be harvested? Why should we speculate on the possibility that defendant had made a false or erroneous assertion? In our view Gruber's statement is sufficient, for present purposes, to show affirmatively that the defendant was able to perform its contract with Whiteman; the letter gives rise to a fair inference, satisfying us that out of a short crop, the defendant was then keeping  that is, it had then put by  enough of the goods to meet Whiteman's order. Plenary proof is not required.
Defendant then argues, in effect, that there is no plenary proof as to the matter of damages. We find that the affidavits submitted are sufficient.
This brings us to the last main question, namely, whether the goods were attachable. To sustain the point, defendant first says that the goods had no situs here because Whiteman effected entry for "immediate export only." But this is a matter not mentioned below. Besides there is nothing in the record to substantiate it.
In the next place defendant says that the goods attached here were in the custody of a common carrier of this or another state and therefore, under N.J.S. 2A:26-2, not attachable. There is no proof that the goods were in the custody of a common carrier of "this or another state." As to the meaning of "state," see R.S. 1:1-2. At the time of the attachment the goods were on the pier of the Holland-America Line. As to the reason, in general, for the provision in N.J.S. 2A:26-2 (cf. R.S. 2:42-72) with respect to goods in transit, see Singer v. Raphael & Son, 21 N.J.L.J. 309 (Circ. Ct. 1896); cf. Morrel v. Buckley, 20 N.J.L. 667 (Sup. Ct. 1846), where it does not appear that the goods were in the custody of a common carrier. Cf. as to the matter of transit, May v. Huff, 12 N.J. Super. 418 (Cty. Ct. 1951).
It is then insisted that the merchandise here was "taken or detained under * * * [a] revenue law," but *412 there is no proof of an actual taking or detention thereunder. It cannot therefore be said that by force of 28 U.S.C., sec. 2463, this court is ousted of jurisdiction, or the goods are in custodia legis. Nor is there any proof that the collector had given "permission" to have the property remain on the pier of the Holland-America Line, in accordance with 19 C.F.R. 22.32 (cf. 19 C.F.R. 18.24), so as to put the goods in customs custody. We will assume that under 19 C.F.R. 8.1 (b) the United States Government, at the time of the attachment, had an enforceable lien because of duties owing to it; that under 19 C.F.R. 18.24 the collector may take possession of the merchandise at any time; and that under 19 C.F.R. 8.5 the goods could not be examined by any person until proper entry had been made. None of this establishes that the goods were actually "taken * * * under any revenue law."
Defendant relies upon Harris v. Dennis, 3 Pet. 292, 28 U.S. 292, 7 L.Ed. 683 (1830), a suit by a deputy sheriff against a United States marshal for trover. The court there says that an attachment presupposes a right to take possession of goods. Resting upon that hypothesis, the court holds that an attachment by a sheriff, where customs duties are due, is void as repugnant to the laws of the United States.
Under our law today, an attachment may be made of personal property without taking the property into possession, R.R. 4:77-1 (a) (2), or without in any way interfering with prior rights. McDonald v. Matoil Service etc. Co., 115 N.J.L. 239 (Sup. Ct. 1935); Gumbel v. Pitkin, 124 U.S. 131, 8 S.Ct. 379, 31 L.Ed. 374 (1887). Thus it is settled law in this State that property in custodia legis is not subject to seizure on attachment; nevertheless the defendant's interest in the property may be attached. Conover v. Ruckman, 33 N.J. Eq. 303 (E. & A. 1880); Hoffman v. Kahn, 119 N.J. Eq. 171 (Ch. 1935); cf. U.S. v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1937). The right or credit of the defendant is taken under the attachment. Smith v. Reed, 74 N.J. Eq. 776 (Ch. 1908). That may be all that could be attached here, and any attempt by *413 the sheriff in the present case to take the goods into his possession may have been illegal and void. But we need not decide the matter. In fact (according to the sheriff's endorsement on this writ) the sheriff served the writ by serving the chief delivery clerk of the Holland-America Line who was holding the goods for storage charges. The goods were left on the pier.
There is no reason why the attachment of the defendant's interest in the goods should not be sustained, provided any superior rights of the United States are in no way interfered with. Were the law otherwise, a debtor could refuse to pay customs duties and thereby thwart an attachment. We do not conceive that the federal laws were designed to grant debtors such an immunity from their creditors.
There is very little law on the matter. The attachment proceeding here thus becomes, as it is called in some states, a garnishment proceeding, quite analogous to the trustee process in Maine. Peabody v. Maguire, 79 Me. 572, 12 A. 630 (Sup. Jud. Ct. 1897). Cf. 250 Tons Salt on Bd. Schooner Barbara F. Latimer, 5 F. 216 (D. Ct. 1880); The Whippoorwill, 52 F.2d 985 (D. Ct. 1931); General Exporting Co. v. Star Transfer Line, 136 F.2d 329 (C.C.A. 6, 1943); cf. the interpretation of Harris v. Dennie in Conard v. Pacific Ins. Co., 6 Pet. 262, 31 U.S. 262, 8 L.Ed. 392 (1832).
It should be added that pending the action, the goods here were apparently sold to pay an alleged lien of the Holland-America Line for its charges in the sum of $16,750; and that $26,241.54, the remainder of the sale proceeds, was paid into the court below. From the concessions, stated in the orders below, that the customs duties were owing "as of" the date of the levy of the writ, it might seem that the duties have since been paid. It may be too that there are no creditors of defendant with rights supervening between the attachment and the present time. However in view of our conclusions, we need not deal with these circumstances.
Affirmed.